**SECOND CAREY TRUST v. HELVERING,**
Commissioner of Internal Revenue.

No. 7865.

United States Court of Appeals for the
District of Columbia.

Argued Jan. 7, 1942.

Decided March 9, 1942.

Mr. George E. H. Goodner, of Washington, D. C., with whom Miss Helen Goodner, of Washington, D. C., was on the brief, for petitioner.

Mr. Lee A. Jackson, Special Assistant to the Attorney General, with whom Mr. Samuel O. Clark, Jr., Assistant Attorney General, and Mr. J. Louis Monarch, Special Assistant to the Attorney General, were on the brief, for respondent.

Mr. Sewall Key, Special Assistant to the Attorney General, and Mr. J. P. Wenchel, General Counsel, Bureau of Internal Revenue, of Washington, D. C., and Mr. Charles E. Lowery, Special Attorney, Bureau of Internal Revenue, of Washington, D. C., also entered appearances for respondent.

Before GRONER, Chief Justice, and MILLER, and EDGERTON, Associate Justices.

GRONER, C. J.

The case requires an answer to three questions: (1) Did the Board err in holding petitioner not a trust but an association taxable as a corporation; (2) Did the Board err in refusing to exclude the amount of $36,882.84 from petitioner's gross income; (3) Did the Board err in denying petitioner's motion to grant further hearing or a new trial?

Briefly stated, the facts are these: In 1934 Messrs. Diffie, Brown, and Shanks, presumably of the State of Oklahoma, having acquired the right to receive one-eighth of seven-eighths of the net proceeds of the sale of oil and gas produced from five Oklahoma wells, organized petitioner, Second Carey Trust, and designated themselves as trustees. The trust was organized as an "express trust" under the Oklahoma laws. In addition to the one-eighth interest in the producing wells, it acquired mineral leases on four tracts of land located in four different Oklahoma counties. The trust estate was divided into 5,000 units of beneficial interests, for which nonassessable certificates were to be sold. The owner of each unit was entitled to receive a one five-thousandth part of the net income of the trust. The certificates were trans-

ferable only on the books of the trust. The trustees were authorized to manage the trust; to receive, collect, and distribute the income; to sell the property with the consent of two-thirds of the holders of beneficial units; to deduct from gross receipts expenses in management and administration, including five per cent of the net as compensation to themselves; and then to distribute the balance of the net equally among the unit holders monthly. The trust instrument further provided that neither the trustees nor the unit holders should be personally liable for the obligations of the trust and that the death of a unit owner or the transfer of his interest should not affect continuity of the trust, which should continue for a period of twenty years but might be terminated at any time upon written direction of the owners of two-thirds of the beneficial units. Upon termination, the trustees were empowered to sell the property without procuring consent of the unit holders. The trustees were required to keep correct records and accounts and were authorized to fill any vacancies in the trusteeship. The trust had no part in the operation of the producing wells, which had been drilled by an oil company on an oil lease from the owners of the land, but was liable for its pro rata share of the operating expenses, which the trustees were to verify and pay. The trust, however, was sole owner of the four nonproducing leases which, in the event of production, were to be operated by the trust for its benefit. The leases, however, were never developed, but two or three years after the formation of the trust were discontinued by nonpayment of the agreed rentals. Under the terms of the trust instrument, the trustees were entitled to receive for themselves the proportionate part of the net income applicable to unsold units of beneficial interest. In 1934, which is the taxable year in question, this amounted to the sum of $48,382.84. Of this, however, the trustees relinquished to the trust $36,882.84, which constitutes the item mentioned under the second heading above.

Petitioner for the year 1934 made its income tax return as a trust, showing a net loss of over $7,000. Subsequently the Commissioner held that petitioner was taxable as a corporation and determined a deficiency. Petitioner appealed. The Board sustained the finding that petitioner was an association taxable as a corporation

within the meaning of the applicable law.[1] It held, contrary to the Commissioner, that petitioner was entitled to depletion in the amount of 27½ per cent of its gross income[2] and was also entitled to a deduction of 12½ per cent of the declared value of its capital stock in the computation of excess profits tax. The result of the Board's decision was to reduce the amount of the deficiency, but to leave a substantial sum due, for which judgment was entered.

**First.** The first and most important question is—Was petitioner a trust, for if it was, admittedly no tax is due. It is conceded by the Commissioner that under the laws of Oklahoma petitioner is an express trust.[3] On the basis of this, counsel argue that the federal government must tax entities as it finds them. And there is much reason in the contention—particularly in cases in which Congress has not specially declared otherwise. But unfortunately for petitioner, the rule as determined by the Supreme Court is to the contrary. "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law". Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, and see Heiner v. Mellon, 304 U.S. 271, 279, 58 S.Ct. 926, 82 L.Ed. 1337. The applicable federal act defines the term "corporation" as including associations, joint-stock companies, and insurance companies,[4] and the Supreme Court in illustrating the statutory concept of association in Morrissey v. Commissioner,[5] Helvering v. Combs,[6] and Helvering v. Coleman-Gilbert Associates,[7] so fully covered the field of group business activity, that greater "ingenuity" than petitioner has shown or we can provide is required to place this trust outside the taxable pale.

**Petitioner,** however, thinks otherwise, and insists that here, unlike the cases we have cited, there were no "associates" and accordingly the Supreme Court rule does not fit. The basis of this is two-fold; that when this trust was created the trustees did not know who would buy the certificates, and that the

trust and not the trustees was the seller. But if the basis is admitted to be true, it is still a distinction without a difference. The trustees as individuals transferred the property rights to the trust, and as trustees retained the beneficial interest in all the unsold shares, and the fact that they received these benefits as trustees rather than as owners does not change the true nature of the transaction. They held on until other associates took their places. To adopt petitioner's view that because of this method of organization and sale they were not "associates" would be giving substance to pure fiction. Nor is petitioner's argument that it is a strict or liquidating trust and is not a business trust any more convincing. Certainly, it has the characteristics as well as the powers of the latter and that, as the Supreme Court has declared, is enough. It cannot escape taxation by declining to exercise the powers which the instrument of its creation permits. Helvering v. Coleman-Gilbert Associates, supra, 296 U.S. at page 374, 56 S. Ct. 285, 80 L.Ed. 278.

But even if this view of petitioner's contention be put to one side, there is here at least some evidence of actual business activity. The trust held, in addition to its right of participation in the earnings of the producing wells, outright leases to four parcels of potential oil land, obviously for purposes of development or sale. The powers of the trust instrument permitted either. Equally obviously, the right of management and control was in fact exercised in the decision to abandon the leases and discontinue the payment of rentals thereon. The determination by the trustees that the prospects of striking oil would not justify the cost of exploration was the exercise of business judgment in the control of properties acquired for profit and gain. Nashville Trust Co. v. Cotros, 6 Cir., 120 F.2d 157, certiorari denied 62 S.Ct. 181, 86 L.Ed. ——. If the discretion had been affirmatively exercised, business activity would have followed. That it was negatively exercised is wholly different from its non-exercise. The fact of exercise at all is the expression of business judg-

---

[1] Sec. 801(a) (2), Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 790.

[2] Sec. 114(b) (3), of the Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 114(b) (3).

[3] Sec. 11820 Oklahoma Statutes, 1931, 60 O.S.1941, § 171. State v. Prairie Cotton Oil Co., 180 Okl. 608, 71 P.2d 988.

[4] Revenue Act 1934, ch. 277, 48 Stat.

680, 26 U.S.C.A. Int.Rev.Acts, page 664 et seq.

[5] 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263.

[6] 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275.

[7] 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278.

ment in an enterprise for profit. Considered in relation to the cases we have cited, petitioner's argument that the trust does not resemble a corporation is not sustainable. On the contrary, we think it has all the main characteristics which the Supreme Court has named as distinguishing a corporation and a trust, namely, persons associated in carrying on a business enterprise, title in a continuing body—the trustees—to the property, both opportunity and the exercise of centralized management, continuity of existence, with ability to transfer interests without affecting continuity, and limited liability. And see Bert v. Helvering, 67 App.D.C. 340, 92 F.2d 491.

Second. Did the Board err in failing to exclude an item of $36,882.84 from petitioner's gross income?

As we have seen, petitioner's financial set-up is represented by 5,000 units of beneficial interest. The plan contemplated the sale of these units as opportunity offered, but provision was made to retain for the benefit of the creators of the trust—the trustees—all income payable on all such units as were not then sold to the public. In the taxable year in question some forty-eight thousand odd dollars thus accrued, but of this amount the trustees took only $11,500 and surrendered to the trust the remaining $36,882.84, and petitioner collected and included this amount in its return of gross income. Its position here is that the item did not constitute income to petitioner, should have been excluded by the Board, and not computed in the amount of its income. The Board said:

"There is some evidence to the effect that during the taxable year approximately $36,882.84 of income applicable to unsold units was permitted by the trustees to be retained by the trust for distribution to the unit holders. The reason for this action does not appear. This amount was included in income by the respondent in determining the deficiency here in question. The petitioner has raised no issue as to this in the pleadings. Under the evidence before us, we cannot disturb this determination."

Petitioner does not seriously question the validity of the decision as to this item in the circumstances under which it was made, but insists that the Board should have permitted an amendment to its petition, which some weeks after the Board's decision it requested permission to file. If the item was not "gains, profits, and income", it should not have been taxed and while, as the Board said, not much appears in relation to it, for present purposes we assume it was no more than a voluntary payment by the trustees and therefore a mere gratuity. In such a case, my own view has always been, the government should waive technicalities rather than insist upon the exaction from one of its citizens of more than he owes. But unfortunately this is not the rule. To the contrary, the government, through its officers, invariably insists, in its law suits, upon any and every legal right it has, and sometimes the legal right and the moral right clash, in which case I have always thought the former should give way to the latter. But nothing is accomplished in stressing the point, first because it is not the prevailing view and, second, because it is well settled that a taxpayer on appeal to the Board is limited to the issues raised by his pleadings, and the position now contended for, admittedly, was not alleged. In justification of its dilemma, petitioner points out that its purpose in refusing to file alternative pleadings was to avoid embarrassment to its main position, i. e., that it was a trust and therefore not taxable as a corporation. But petitioner having made its election, it was discretionary with the Board after it had lost its main contention to permit it to mend its hold and try the case over again. Roberts v. Commissioner, 19 B.T.A. 351, 355; Hanby v. Commissioner, 4 Cir., 67 F.2d 125, 127; Popular Price T. Co. v. Commissioner, 7 Cir., 33 F.2d 464, 465.

And there is still another reason which militates here against petitioner in the application of a rule of right and fairness rather than the strict rule of law. For it seems clear that if the $36,000 item was income to the trustees, it was taxable to them as such. When they relinquished their right to it, it is a fair assumption that they wholly disregarded it as income for which they were taxable, with the result now that if it be disregarded in petitioner's income, the government will have lost on a transaction which petitioner was wholly responsible for. In this state of facts, it would be going too far to say that the action of the Board was not correct in refusing to allow the amendment to the petition.

Third. What has just been said disposes of a part of petitioner's point that the Board erred in refusing a further hear-

ing and leave to amend its petition. In addition to the item we have just disposed of, petitioner sought by its amendment to set up new and different grounds on which to claim the deduction of an item of approximately $20,000 as expenses growing out of development costs. Granting that this item was allowable in reduction of gross income, which in the paucity of the record is going pretty far, we are nevertheless confronted here with the rule we have already spoken of, namely, that new issues not included in the pleadings submitted to the Board and decided by the Board may not, of right, be included after decision by amendment. Steele-Wedeles Co. v. Commissioner, 7 Cir., 63 F.2d 541, 543. Clearly, therefore, a petition to amend after final decision is to be considered subject to the discretion of the Board.

On the whole case, we are of opinion that the Board's decision should be, and it is, affirmed.

Affirmed.

EDGERTON, J., concurs in the result, and in the first part of the opinion.