**HALEY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 14234.

United States Court of Appeals
Fifth Circuit.

April 23, 1953.

Henry Ravenel, Lawrence A. Baker, Baker, Selby & Ravenel, all of Washington, D. C., for petitioners.

C. Hoxley Featherston, Sp. Assts. to Atty. Gen., Carlton Fox, Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Acting Asst. Atty. Gen., Charles W. Davis, Chief Counsel, Bureau of Internal Revenue, Claude R. Marshall, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Petitioners seek review of a decision of the Tax Court assessing them with deficiencies in Federal income taxes for the calendar years 1944 and 1945. The opinion of the Tax Court is reported at 16 T.C. 1509.

Petitioner, D. G. Haley, and his wife, Anne M. Haley, filed joint returns for the tax years involved on the cash receipts and disbursements basis. In March, 1943, petitioner agreed with one William Greve to purchase and develop certain lands for the production and sale of gladioli spikes.

Lands were accordingly purchased and developed prior to October 1943 for that purpose. Title to the lands was taken in the name of River Farm and Nurseries, Inc. (hereinafter called the River Corporation), which was owned by Greve. Petitioner did not supply any of the money for the purchase or development of the land.

The River Corporation, as lessor, and petitioner, as lessee, entered into a "Lease Agreement" on October 21, 1943, covering lands at Terra Ceia, Florida, for the period from July 1, 1943, to June 30, 1948. It was expressly stated in that agreement that the parties did not intend to enter into a partnership relation or a joint venture, and neither party was to be liable for debts or obligations of the other. Further provisions of the agreement required petitioner to grow gladioli on the lands during the specified period and to consult with and keep River Corporation advised as to the operation of the property. Petitioner was to retain 25 per cent of any net income from the business and to pay the remaining 75 per cent to the Corporation. There was no specific provision as to how any losses would be divided. The Corporation was also entitled to have 75 per cent of all personal property acquired by petitioner for operating the business at the end of the period. Petitioner was not to spend any money in operating the property "except when and to the extent either that moneys therefor are advanced to Lessee by Lessor, pursuant to an agreement of even date executed and delivered by Lessor and Lessee, or that moneys therefor are available to Lessee from the operation of the business on said premises."

The "agreement of even date" referred to the River Corporation as "seller" and petitioner as "purchaser". It recited that petitioner desired to acquire an undivided one-half interest in the property owned by River Corporation; that the Corporation was to advance funds for the development and operation of the lands; and that petitioner was to repay it for one-half of the advances, with interest. The property was the same as described in the "Lease Agreement" and the stated cost of the lands was $30,264. The Corporation agreed to advance peti-

tioner all funds necessary for the purchase of machinery and equipment required for operating the business, but the total advances, including the cost of the land, were not to exceed $175,000. No advances were to be required after December 31, 1944. All advances were to be made against written requisitions by petitioner after he and the Corporation had agreed upon the necessity and advisability of the purchase of the items requisitioned. To secure the advances Petitioner was to deliver to the Corporation his negotiable promissory notes for 50 per cent of the amount advanced and 50 per cent of the cost of the land. The notes were all to be payable on or before June 30, 1948, with interest at 4 per cent payable annually. Petitioner was not to receive any compensation for his services in operating the property. The Corporation agreed to apply in partial payment of petitioner's notes 50 per cent of its 75 per cent of the profits from the business and was to give petitioner a deed for a 50 per cent undivided interest in the property when all of the promissory notes were paid. The parties again stated that they did not intend to enter into a partnership or joint venture, and neither party was to be liable for any debts incurred by the other.

The parties attempted to carry out their obligations under the above two agreements. The River Corporation advanced a total of $189,052.49, the last advance being made in February, 1944. Petitioner delivered to the Corporation his promissory notes all due June 30, 1948, bearing interest at 4 per cent. The total principal amount of the notes was $94,526. Petitioner devoted about half his time to the management of the business and used all the money advanced by the River Corporation in its operation. In accordance with the agreements, River Corporation had the right of refusing its sanction to an expenditure it deemed inadvisable, and at all times had the right of consultation, inspection and re-

view. The operation of the business resulted in a total loss of $108,794.54 during 1944 and 1945. Petitioner filed partnership returns for the business for the fiscal years 1944 and 1945 subscribing to it the above loss, and he and his wife in their joint returns for the calendar years 1944 and 1945 claimed the entire loss and in their return for 1946 claimed a net loss carryover.

The Tax Court, although conceding that "both River and the petitioner were involved in the operation of the business, regardless of what the operation is called", nevertheless refused to allow petitioner to deduct the alleged losses, mainly on the theory that under the agreements River Corporation sustained all of the losses and petitioner, being on the cash basis, had not suffered any deductible loss during the tax years involved, since he admittedly had never discharged his liability under the promissory notes.[1] In sustaining the Commissioner's disallowance of the claimed deductions, the Tax Court assessed deficiencies against petitioner and his wife in the amount of $15,228.79 for 1944, and $6,411.07 for 1945.

Without questioning the findings of fact of the Tax Court, petitioner contends that it erred in failing to conclude as a matter of law that (1) the agreements between petitioner and River Corporation, together with the conduct of the parties thereunder, resulted in the creation of a joint venture and therefore a partnership under Section 3797(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 3797(a) (2); (2) as a member of a joint venture, petitioner was entitled to include in his returns the result of the venture in so far as he shared a distributive part of its loss during 1944 and 1945, amounting to one-half; and (3) as a result of being allowed to reflect his share of the joint venture losses for 1945 in his individual return, he was further entitled to carryback to 1943 and 1944 the amount of the losses exceeding his taxable income for 1945.

1. The Tax Court made further findings as to the circumstances under which petitioners notes were cancelled as of December 31, 1945, and the property transferred to Terra Ceia Bay Farms, Inc. However, these facts are not essential to the disposition of the case here. Petitioner did make interest payments on his notes from the date of their issuance until January 1, 1946, which amounts are not here in dispute.

The Commissioner attempts to sustain the Tax Court's decision on three grounds: (1) that the error of the Tax Court, if any, in failing to hold that the business was carried on by petitioner and River Corporation as joint ventures under the agreements was induced by petitioner and therefore cannot be urged by him; (2) that the Tax Court's interpretation of the agreements as failing to permit deduction of the alleged losses is not "clearly erroneous", and (3) even if the relationship of joint ventures actually here existed, as petitioner contends, he would not be entitled to deduct the losses claimed, since under the agreements River Corporation actually advanced all the money to buy the property and operate the business, and was alone entitled to deduct any losses suffered.

We agree with petitioner that there was no such inconsistency in his position before the Tax Court or in the written agreements as would preclude his reliance upon the existence of a joint venture for tax purposes here. Having failed to establish his right before the Tax Court to deduct the entire losses as sole proprietor of the business, petitioner is merely insisting that the record before us supports his alternative claim for one-half the losses because of the actual existence of a joint venture for tax purposes, irrespective of the agreements and his prior position. This he is entitled to do. Cf. Stearns Co. v. United States, 291 U.S. 54, 61–62, 54 S.Ct. 325, 78 L.Ed. 647; Orenstein v. United States, 1 Cir., 191 F.2d 184, 193.

It appears settled that neither local law nor the expressed intent of the parties as to the legal nature and effect of their written agreements are conclusive as to the existence or non-existence of a partnership or joint venture for federal tax purposes. See C. I. R. v. Culbertson, 337 U.S. 733, 736, 742, 69 S.Ct. 1210, 93 L.Ed. 1659; Heiner v. Mellon, 304 U.S. 271, 279, 58 S.Ct. 926, 82 L.Ed. 1337; Second Carey Trust v. Helvering, 75 U.S.App.D.C. 263, 126 F.2d 526, 528; Poplar Bluff Printing Co. v. C. I. R., 8 Cir., 149 F.2d 1016. Substance

rather than form controls in applying the federal tax statutes, and "the realities of the taxpayer's economic interest rather than the niceties of the conveyancer's art should determine the power to tax." Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56, 58, Footnote 1, 62 S.Ct. 925, 927, 86 L.Ed. 1266; Cf. Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788. Applying that principle here, even though it was expressly stated that the parties did not intend to enter into a joint venture or partnership, if the agreements and the conduct of the parties thereunder plainly show the existence of such relationship, and the intent to enter into it, it will nevertheless be held to exist for tax purposes. See Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226; Bankers Mortgage Co. v. Commissioner, 5 Cir., 141 F.2d 357; Hogan v. Commissioner, 5 Cir., 141 F.2d 92, 94; West v. Commissioner, 5 Cir., 150 F.2d 723; Benton v. Commissioner, 5 Cir., 197 F.2d 745. As the Tax Court itself held in Claire Hoffman, 2 T.C. 1160, at page 1172, "where his contract and the surrounding circumstances show him to be in fact a joint venturer, contributing to the capital and sharing in the profits and losses, he may be adjudged to be a partner even though the contract with his co-adventurers specifically provides otherwise."

A joint venture has been defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation". Tompkins v. Commissioner, 4 Cir., 97 F.2d 396, 398; Aiken Mills v. United States, 4 Cir., 144 F.2d 23; See also Mertens' Law of Federal Income Taxation, Vol. 6, Sec. 35.05, p 118. Section 3797(a)(2) of the Internal Revenue Code (beginning with Sec. 1111 (a)(3) of the 1932 Act) [2] has defined the term "Partnership" so as to include a joint venture, as follows:

"*Partnership and partner.* The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or

---

2. For legislative history of this section see Report of Committee on Ways & Means on the Revenue Bill of 1932 contained

in Seidman's "Legislative History of Federal Income Tax Law", at p. 501.

by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization."

Regulation 111, Section 29.3797-1 (issued in 1943) and promulgated by the Commissioner further provides:

"Classification of Taxables:—For the purpose of taxation the Internal Revenue Code makes its own classifications and prescribes its own standards of classification. Local law is of no importance in this connection. Thus, a trust may be classed as a trust or an association (and therefore a corporation) depending upon its nature or its activities. The term 'partnership' is not limited to the common law meaning of partnership but is broader in its scope and includes groups not commonly called partnerships."

Section 182 of the Code, 26 U.S.C.A. § 182, requires the tax partners, or members of a joint venture under the definition contained in Sec. 3797(a)(2), supra, to be computed as follows:

"Tax of partners

"In computing the net income of each partner, he shall include, whether or not distribution is made to him—

\* \* \* \* \* \*

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)". See also 26 U.S.C.A. §§ 183, 187, 188; Regulation 103, Section 19.182–1, Section 19.183–1 (issued 1949).

The provisions of the Internal Revenue Code make it clear that for tax purposes a partnership, although a tax-computing unit, as a unit pays no tax, and individuals carrying on business in partnership are liable for income tax only in their individual capacities. See 26 U.S.C.A. § 181 et seq. Consequently any gain or loss resulting from the operation of a partnership is that of the tax-computing entity, i.e. the partnership, and is not directly attributable to the individual partners. Robert E. Ford, 6 T. C. 499; see also Mertens' Law of Federal Income Taxation, Vol. 6, Sec. 35.24, p. 181, Sec. 35.18, p. 170; 27 Am.Jur. "Income Taxes", Sec. 169, p. 405. Even though an individual taxpayer is on a cash basis of accounting, if he is a member of a partnership on the accrual basis, consistency requires that he reflect in his individual return his distributive share of the net profits or losses of the partnership as shown on its return. Fritz Hill, et al., 22 B.T.A. 1079; Percival H. Truman, 3 B.T.A. 386. By the same token we think a taxpayer on the cash basis, such as petitioner here, is required to take deductions for losses resulting from his interest in a partnership or joint venture in the year they are legally sustained, even though liability for such losses is discharged with borrowed funds. See Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383; Heiner v. Mellon, 304 U.S. 271, 276, 58 S.Ct. 926, 82 L.Ed. 1337; Pacific National Co. v. Welch, 304 U.S. 191, 194, 58 S.Ct. 857, 82 L.Ed. 1282; Brown v. Helvering, 291 U.S. 193, 200, 54 S.Ct. 356, 78 L.Ed. 725; Charles H. Steffey, Inc., 23 B.T.A. 913; Estate of L. O. Koen, 14 T.C. 1406; Cf. Commissioner v. Security Flour Mills Co., 10 Cir., 135 F.2d 165, 167. Any other rule might well promote inconsistency in the annual reporting of profits and losses under the tax structure and enable taxpayers to manipulate their financial affairs so as to determine the most profitable year in which to claim losses, in violation of the Supreme Court's admonition that the liability of every taxpayer must be determined on the basis of the economic result to him of each year's experience, and that, "Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." Burnet v. Sanford & Brooks Co., supra, 282 U.S. at page 365, 51 S.Ct. at page 152.

While the River Corporation under the agreements was to advance all of the necessary funds up to a stated amount for the operation of the business, petitioner

was at the same time required to execute and deliver to it valid promissory notes payable "on or before June 30, 1948", and bearing interest at 4 per cent for one-half of the amount of the advances. To the extent that the notes did not represent a share in the property itself they were incurred as absolute and unconditional obligations to reimburse River Corporation for funds advanced in the operation of the business. Moreover, if petitioner defaulted under the agreement or failed to pay the notes on demand, River Corporation was given an election to sell his interest in the lands, and if the proceeds from the sale were not sufficient to discharge the notes, to hold petitioner for the balance. It is undisputed that during the tax years involved the existing. liability of petitioner was for the full amount of the notes, and interest was paid on them on such basis. If petitioner had died during this period, no one can deny that his estate would have been depreciated in value to the full extent of the notes outstanding. Furthermore, if the joint venture had succeeded during 1944 and 1945 so that petitioner had realized a profit under the agreements, he would doubtless have been required under the statute to report it and been subjected to a tax thereon, even though the net profit of the partnership had been left undistributed. See 26 U.S.C.A. § 182. We do not think a different rule is here justified because he seeks to deduct a loss not expressly provided for in the agreements, but legally sustained during the same period. In disallowing the claimed deductions, the Tax Court apparently confused the duty of a partner to reflect in his individual return the results of the operation of the partnership of which he is a member, regardless of whether the partnership shows a profit or loss, with the right of an individual on a cash basis to deduct a loss of capital under Section 23 of the Code. See Page v. Rhode Island Hospital Trust Co., 1 Cir., 88 F.2d 192, 121 A.L.R. 693; Max Gross, 36 B.T.A. 759; 26 U.S. C.A. § 23 et seq.

Viewing the agreements here involved and the conduct of the parties in the light of the broad statutory definition of a partnership contained in Sec. 3797(a) (2), supra, and the avowed purpose of its adoption (footnote 2, supra), we conclude that a partnership for tax purposes here existed and that petitioner is entitled to deduct his one-half distributive share of the losses sustained during 1944 and 1945. See Reynolds v. McMurray, 10 Cir., 77 F.2d 740, 741, 742; Cf. Landreth v. United States, D.C., 70 F.Supp. 991, affirmed 5 Cir., 164 F.2d 340.

The cause is, therefore, reversed and remanded to the Tax Court with directions to allow the deductions claimed.

Reversed and remanded.