**ESTATE of Mary Redding SHEDD, First National Bank of Arizona, Trustee, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

**No. 18001.**

United States Court of Appeals
Ninth Circuit.

July 15, 1963.

Louis McClennen, Phoenix, Ariz. (Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., of counsel), for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Carolyn R. Just, Art Strout, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before MERRILL and BROWNING, Circuit Judges, and TAYLOR, District Judge.

BROWNING, Circuit Judge.

Harrison Shedd died on November 1, 1949. His estate filed a federal estate tax return claiming a marital deduction under the provisions of Section 812(e) (1) (F) of the Internal Revenue Code of 1939 with respect to property left by Harrison to his wife, Mary. The Commissioner disallowed the deduction and assessed a deficiency. This determination was sustained by the Tax Court (Estate of Shedd v. Commissioner, 23 T.C. 41 (1954)) and, ultimately, by this Court. Estate of Shedd v. Commissioner, 237 F. 2d 345 (1956).

Meanwhile, on January 7, 1955, Mary died. Her estate filed a return in which a credit was taken for the estate tax paid by Harrison's Estate as "Federal estate tax paid with respect to the transfer of property * * * to the decedent by or from a person * * * who died within 10 years before * * * the de-

cedent's death." Int.Rev.Code of 1954, § 2013.

On September 2, 1958, Congress amended Section 812(e) (1) (F) of the Internal Revenue Code of 1939 to permit a marital deduction in the circumstances present in Harrison's Estate. The amendment was expressly made applicable "to estates of decedents dying after April 1, 1948, and before August 17, 1954," and allowed estates otherwise barred by limitations a period of one year from September 2, 1958, to apply for a refund. Section 93(b), Act of September 2, 1958, 72 Stat. 1668.

On March 31, 1959, the Commissioner issued a deficiency notice against Mary's Estate disallowing the credit previously taken for the tax paid by Harrison's Estate. Mary's Estate filed the present proceeding in the Tax Court challenging the Commissioner's action. The Tax Court sustained the Commissioner's determination [Estate of Shedd v. Commissioner, 37 T.C. 394 (1961)], and Mary's Estate took this appeal. While this proceeding was pending before the Tax Court, the estate tax attributable to the property made eligible for the marital deduction by the Act of September 2, 1958, was refunded to Harrison's Estate.

The only question raised by Mary's Estate on this appeal is whether the tax initially paid by Harrison's Estate on the property subject to the marital deduction, though refunded, may still serve as the basis for a credit under Section 2013 against the estate tax liability of Mary's Estate.

Mary's Estate argues that "[t]he estate so far as may be is settled as of the date of the testator's death" [Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647 (1929)]; that "[d]eath freezes the estate's tax obligation into immutability" [Estate of Shedd v. Commissioner, 237 F.2d 345, 352 (9th Cir. 1956)]; and, therefore, that the Section 2013 credit to which Mary's Estate was entitled as of the date of her death should be allowed without regard to subsequent events.

The judicial expressions upon which Mary's Estate relies are not formulations of immutable principle, but simply statements of the understanding of the courts that the general intention of Congress is that the federal estate tax shall be computed on the basis of the estate's value at the moment the taxable event (the transfer at death) occurs. But Congress did not intend to make events at the date of death invariably determinative in computing the federal estate tax obligation. See, e. g., Internal Revenue Code of 1954, §§ 2032, 2053(a) (1) & (2), and 2054. And when it appears that the intent of Congress will be served by considering events subsequent to death for this purpose the courts have not hesitated to do so. See, e. g., Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 65, 62 S.Ct. 925, 86 L.Ed. 1266 (1942); Commissioner of Internal Revenue v. Estate of Shively, 276 F.2d 372 (2d Cir. 1960); Commissioner of Internal Revenue v. State Street Trust Co., 128 F.2d 618, 142 A.L.R. 943 (1st Cir. 1942); Buck v. Helvering, 73 F.2d 760 (9th Cir. 1934); Jacobs v. Commissioner, 34 F.2d 233 (8th Cir. 1929); 1961 Duke L.J. 474, 476–77; 15 Sw.L.J. 628, 632 (1961).

It seems reasonably clear that Congress intended to fix the tax credit available under Section 2013(a) of the Internal Revenue Code of 1954 in accordance with the facts as to prior taxation of the transferred property, even though those facts occurred after the transferee's death (subject, of course, to the usual statute of limitations on assessment or refund. Int.Rev.Code of 1954, §§ 6501, 6511).

Section 2013(b) provides that the credit shall be computed in part on the basis of the tax paid by the estate of the transferor. Until the tax due from the transferor estate is determined, the credit due the transferee estate cannot be computed. Thus the statute necessarily contemplates the consideration of events subsequent to the death of the transferee at least

in every instance in which that event precedes the final determination of the tax due from the transferor estate—a not infrequent occurrence.

Moreover, the credit under Section 2013(a) is extended not only where the transferor predeceases the transferee, but also where the transferor dies within two years *after* the death of the transferee. See 99 Trusts & Estates 416, 490 (1960). In such cases, again, an event occurring after the death of the transferee is an essential prerequisite to the availability of the credit.

Congress intended to impose a tax "on the transfer of the taxable estate * * of every decedent" (Int.Rev.Code of 1954, § 2001), but at the same time, by the provisions of Section 2013, sought to avoid "subjecting the same property to tax twice within a relatively short period of time." H.R.Rep. No. 1337, 83d Cong., 2d Sess. 1954, 1954 U.S.Cong. & Admin.News at p. 4452. See 99 Trusts & Estates 416 (1960); 4 Mertens, Federal Gift & Estate Taxation § 31.13 (1959).

■ If Section 2013 were construed to require computation of the credit due the transferee estate as of the time of the transferee's death, the transferee estate might secure a credit although no prior tax was ultimately paid, as in the present case, thus defeating Congress's purpose to collect a tax upon the taxable estate of every decedent except where the result would be double taxation in a relatively short period. On the other hand, if the transferor estate paid the tax initially only after the transferee's death, the transferee would be denied a credit although a prior tax had in fact been paid, thus defeating Congress's purpose to avoid double taxation. We are not persuaded that the language of Section 2013, or the pertinent decisions, require us to read Section 2013 in a way which would so clearly frustrate its intended purpose.

Nor are we convinced by the arguments which Mary's Estate bases upon the language and asserted purposes of the Act of September 2, 1958. Mary's Estate argues that the 1958 Act cannot affect it (1) because the 1958 Act applies only "to decedents dying before August 17, 1954" and Mary died in 1955; (2) because the tax liability of Mary's Estate is determined by the Internal Revenue Code of 1954, and the 1958 Act by its terms is an amendment of the Internal Revenue Code of 1939; and (3) because retroactive measures, particularly those increasing taxes, are to be strictly construed, and although Congress clearly intended to give relief to estates in the position of Harrison's Estate, it did not indicate that it intended to burden estates in the position of Mary's Estate.

The answers seem clear. (1) The date referred to in the 1958 Act is the date of the death of the decedent claiming the marital deduction; in this case, Harrison, who died in 1949. (2) The tax liability of Harrison's Estate was determined by the Internal Revenue Code of 1939, and the Act of 1958 clearly applied to that Code and altered Harrison's Estate's liability. The increased liability of Mary's Estate was only consequential, and was based entirely upon the unamended provisions of the Internal Revenue Code of 1954. (3) There is no question here as to the reach of the 1958 Act; Section 812(e) (1) (F) of the Internal Revenue Code of 1939, as amended by the 1958 Act, clearly applied to Harrison's Estate and decreased that estate's liability. The only question is the proper interpretation of Section 2013 of the Internal Revenue Code of 1954; we have stated our reasons for concluding that this statute should not be interpreted as fixing the available credit irrevocably as of the date of the transferee's death.

■ Finally, Mary's Estate points to the fact that the refund to Harrison's Estate under the 1958 Act was made after the date of the notice of deficiency to Mary's Estate, and suggests that the notice of deficiency was therefore invalid and did not toll the running of the period of limitations under Section 6503 (a) of the Internal Revenue Code of

1954. The issue was not properly before the Tax Court under its rules because not raised by the pleadings, and the Tax Court did not consider it. In these circumstances, neither do we. Rice v. Commissioner, 295 F.2d 239 (5th Cir. 1961); Given v. Commissioner, 238 F.2d 579, 583 (8th Cir. 1956); Helvering v. Tetzlaff, 141 F.2d 8, 11 (8th Cir. 1944); Second Carey Trust v. Helvering, 75 U.S. App.D.C. 263, 126 F.2d 526, 529 (1942); Commissioner of Internal Revenue v. Sussman, 102 F.2d 919, 922 (2d Cir. 1939). See also May Broadcasting Co. v. Commissioner, 299 F.2d 84, 86 (8th Cir. 1962).

Affirmed.