LYLE MAYHEW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mayhew v. Commissioner
Docket No. 14174-90
United States Tax Court
T.C. Memo 1992-68; 1992 Tax Ct. Memo LEXIS 73; 63 T.C.M. (CCH) 1984; T.C.M. (RIA) 92068; February 3, 1992, Filed *73 Decision will be entered under Rule 155. Lyle Mayhew, pro se. John A. Weeda, for respondent. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By statutory notice dated April 3, 1990, respondent determined a deficiency in and additions to petitioner's 1984 Federal income tax in the following amounts: Additions to Tax
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1) [1]
Sec. 6661
$ 34,876
$ 12,377
$ 2,475
$ 4,769
Following concessions by both parties, [1] the issues for decision are: (1) Whether respondent erred in determining that petitioner received $ 138,215 as ordinary income as compensation for services rather than as a distribution in total liquidation of a joint venture interest resulting in capital gain; (2) whether respondent erred in determining that petitioner is liable for additions to tax pursuant to sections 6651(a)(1) *74 [2] and 6653(a)(1) and (2); and (3) whether respondent erred in determining that petitioner is liable for an addition to tax pursuant to section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Colorado at the time of filing his petition. He filed his 1984 Federal income tax return late, on July 9, 1986. During all relevant times, petitioner was a real estate developer who would locate property with potential for development and then coordinate the acquisition of the property for investors. For a number *75 of years, petitioner was an employee of Scurr, Messenger, Lundquist Associates (hereinafter SMLA), [3] and held the title of vice president of development. In addition to receiving a salary from SMLA, petitioner would receive a bonus upon the completion of a particular project based on a percentage of the difference between the cost of the project and the fair market value of the project, determined by appraisal, upon completion. Petitioner left his employment with SMLA in March of 1982 and had no further relations with it until August of 1983. In August of 1983, SMLA was contemplating development of an office park in south Denver, called Southwood, and asked petitioner to assist it in the transaction. Petitioner accepted and on or about August 30, 1983, he and SMLA entered into a written agreement to govern their relationship. The writing that memorialized the agreement was in the form of a memorandum from Kent D. *76 Messenger, a partner in SMLA, to petitioner which stated, in part, as follows: RE: Initial Joint Venture Based on the following assumptions: 1) Harry A. Scurr plans to go on a mission in early 1985; 2) C. W. Messenger plans to go on a mission in 1989; 3) I, KDM, will probably be moving to Phoenix somewhere between 1986 and 1988; 4) [SMLA] wants to be active in the Denver market; and [5)] we, being [petitioner] and I, want to do at least one office, one commercial, and one residential project each year; THEREFORE, based on the above assumptions if after these two initial joint ventures, we (being [petitioner] and I) feel that we can continue to work together for mutual benefit then [SMLA] will offer [petitioner] ownership in one of the companies in some form. In order to provide [petitioner] with a salary for the next twenty-four months, [SMLA] will advance to [petitioner] $ 3,000 per month as a draw against future profits of the initial joint ventures. These draws are to be secured by Deed of Trust in third (3rd) position against [petitioner's] personal home for $ 75,000. [SMLA] will also advance to the joint venture $ 1,000 a month for overhead expenses. With *77 respect to the split of the profits from the joint venture involving Southwood, [SMLA] will receive at least 2/3 of the profit for being the financial partner. The remaining 1/3 of the profit is to be split between the partners who will manage the marketing, construction, development, and property management tasks; however, in any case [petitioner] is to receive at least 20 percent (%) of the profit.
Pursuant to the agreement, petitioner and SMLA proceeded to investigate the development of Southwood but abandoned the project when petitioner determined it was not feasible. SMLA and petitioner then looked at developing property on a different site called Fairways, which SMLA purchased on or about April 6, 1984, for $ 2,500,000. Petitioner did not make a capital contribution to the Fairways project and was not a titleholder in the property. On June 7, 1984, however, petitioner and his wife did grant to SMLA a deed of trust on their personal residence to secure the repayment of advances or draws that SMLA had agreed to give petitioner during the term of the project. The deed of trust was never recorded. SMLA decided not to develop Fairways and it was sold on October 5, 1984, *78 for $ 3,431,000. In notations made at or near the time of the sale, a partner in SMLA characterized petitioner's share of the proceeds as a bonus. From his share of the proceeds, petitioner contributed $ 75,000 toward a new project. The record is not clear on whether SMLA retained the deed of trust on petitioner's home or whether it was returned to him at this time. At controversy in the instant matter is petitioner's tax treatment of his share of the proceeds from the sale of the Fairways property. Petitioner reported on Schedule C of his 1984 return $ 13,000 of the sale proceeds as ordinary income from his business of being a developer. He reported that $ 138,215 of the proceeds were from the sale of a partnership interest in which he claimed a $ 75,000 basis resulting in a reported long-term capital gain of $ 63,214. [4]
*79 In his notice of deficiency, respondent determined that petitioner failed to report the $ 138,215 as ordinary income, and further determined that this income was subject to self-employment tax. Respondent also determined that petitioner was liable for additions to tax pursuant to section 6651(a)(1) for filing his 1984 return late, pursuant to section 6653(a)(1) and (2) for negligence, and pursuant to section 6661 for a substantial understatement of income tax liability. As noted above, the parties have stipulated the deductibility of various deductions that respondent's statutory notice either limited or denied. OPINION At the close of trial on this case, the parties were directed by the Court to file simultaneous opening briefs on or before September 9, 1991. Respondent did so; petitioner did not. We could find that petitioner has conceded all the issues in this case since on each such issue he has the burden of proof. Rule 142(a); see Calcutt v. Commissioner, 84 T.C. 716 (1985). Notwithstanding these circumstances, we will decide this case on the basis of the entire record. Issue 1: Ordinary Income or Capital Gain
The primary issue that we must *80 decide is the amount and characterization of income that petitioner is required to recognize as a result of the sale of the Fairways property. As we understand his argument, petitioner claims that pursuant to the August 1983 agreement, he and SMLA entered into a joint venture, taxable as a partnership, with respect to the Fairways project. He further argues that his basis in this joint venture was $ 75,000, determined by the transfer by him and his wife to SMLA of the trust deed on their home. Based upon these circumstances, petitioner contends that the distribution of $ 138,215 in proceeds from the sale of the Fairways property was in complete liquidation of his joint venture interest, which resulted in a recovery of his basis and a long-term capital gain of $ 63,214. See secs. 736(b), 741. Respondent, on the other hand, argues that the relationship between petitioner and SMLA was one of principal/independent contractor, or employer/employee, and that petitioner therefore received the proceeds as compensation for services. A joint venture is defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any partnership *81 or corporate designation." Podell v. Commissioner, 55 T.C. 429, 431 (1970) (citations omitted) (quoting Haley v. Commissioner, 203 F.2d 815, 818 (5th Cir. 1953)). For Federal tax purposes, the term "partnership" is broadly defined to include a "joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a corporation or a trust or estate." Sec. 761(a). The same principles used to determine whether a partnership exists are used to determine whether a joint venture exists. Long v. Commissioner, 77 T.C. 1045, 1065 (1981); Luna v. Commissioner, 42 T.C. 1067, 1077 (1964); Beck Chemical Equipment Corp. v. Commissioner, 27 T.C. 840, 849 (1957). Whether an enterprise qualifies as a partnership for tax purposes is a question of fact to be determined under Federal law. Hensel Phelps Construction Co. v. Commissioner, 74 T.C. 939, 947-948 (1980), affd. 703 F.2d 485 (10th Cir. 1983). The primary consideration in making this determination is the parties' *82 intent. Commissioner v. Culbertson, 337 U.S. 733, 742 (1949); Commissioner v. Tower, 327 U.S. 280, 287 (1946). Factors which bear on this determination, none of which are conclusive, include: The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. [Luna v. Commissioner, supra at 1077-1078.] *83 After examining the facts and circumstances in this case, we find that petitioner and SMLA were not joint venturers. In making this finding, we recognize that, pursuant to the 1983 agreement, petitioner and SMLA were in some ways altering their past employer/employee relationship. In contrast to their past relationship, petitioner was no longer entitled to a specified salary and was to share in the profits, as opposed to the difference between the cost and the appraised value upon completion, of the developed projects. Further, petitioner apparently had more control over his work. However, we believe that these facts merely represent a change in their relationship from that of employer/employee to that of principal/independent contractor. Several factors weigh against petitioner's claim that the parties intended to be true joint venturers. Initially, the parties' agreement contained provisions that are inconsistent with an agreement between co-owners. In this respect, it termed as "salary" petitioner's rights to draw against future profits, and contemplated that petitioner would receive "ownership in one of the companies in some form" subsequent to the Fairways project. *84 Further, none of the formalities of a business were observed. See Luna v. Commissioner, supra.In this regard, there is no evidence that there were books of account, bank accounts, stationery, or an office separate from what SMLA maintained for itself. Nor is there evidence that the alleged joint venture filed a partnership tax return, registered with a State body, or held property in the joint venture's name. To prevail, petitioner must show that both he and SMLA intended to form an enterprise taxable as a partnership. Rule 142(a). Cf. Commissioner v. Culbertson, supra.Even if petitioner had the requisite intent to form a joint venture with SMLA, we do not believe that the evidence supports a finding that SMLA was similarly inclined. It appears that SMLA termed the agreement a "joint venture" merely to obtain petitioner's services, not out of any intent to actually enter into a joint venture until sometime subsequent to the Fairways project. Additionally, the notes made by a representative of SMLA at or near the time of sale terming petitioner's share of the proceeds a "bonus" suggest that SMLA viewed the proceeds as *85 compensation for services. Based on the facts and circumstances, petitioner has failed to persuade us that he and SMLA entered into a joint venture with respect to the Fairways property. See Rule 142(a). Accordingly, respondent's determination that petitioner's share of the proceeds from the sale of that property should be reported as ordinary income from compensation is sustained. Since petitioner has failed to persuade us that his status was anything other than an independent contractor, respondent's determination that this income is subject to self-employment tax is sustained as well. See sec. 1401. Issue 2: Additions to tax pursuant to sections 6651(a)(1) and 6653(a)(1) and (2)
Section 6651(a)(1) imposes an addition to tax for failing to timely file an income tax return unless such failure is due to reasonable cause and not due to willful neglect. Section 6653(a) imposes additions to tax for negligence or intentional disregard of rules and regulations. Negligence is defined as the failure to exercise the due care of a reasonable and ordinarily prudent person under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioner *86 has failed to put forward any evidence showing that he is not liable for these additions to tax. See Rule 142(a). He has given no explanation concerning why his return was filed late; we therefore sustain the addition to tax pursuant to section 6651(a)(1). Further, he failed to report as ordinary income the $ 138,215 in proceeds from the sale of the Fairways property. [5] His explanation is unconvincing, either factually or legally. We therefore sustain respondent's determination on these issues. Issue 3: Addition to tax pursuant to section 6661
Section 6661(a) imposes an addition to tax for substantial understatement of income tax. An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. *87 Sec. 6661(b)(1)(A). The amount of the understatement is reduced for any portion of the understatement due to the tax treatment of an item by petitioner for which he had substantial authority or for which he adequately disclosed the relevant facts concerning the item's tax treatment. See sec. 6661(b)(2)(B). Substantial authority for the tax treatment of an item exists when the authorities supporting that treatment are substantial in relation to the weight of authorities supporting the contrary position. See sec. 1.6661-3(b)(1), Income Tax Regs. Adequate disclosure is met if respondent is provided sufficient information to identify the controversy involved. See Shirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Although petitioner may not have had substantial authority for failing to report the $ 138,215 as ordinary income, we believe that he satisfied the requirement of adequate disclosure. His return unequivocally states that he received the proceeds and how he was treating them for tax purposes. Under the circumstances present in this case, we believe that petitioner adequately disclosed the relevant facts as to the tax treatment of the proceeds. *88 See sec. 6661(b)(2)(B)(ii). We hold that the parties shall redetermine the applicability and extent of the section 6661 addition to tax in the Rule 155 computation bearing in mind that adequate disclosure was provided for the proceeds from the sale of the Fairways property. However, petitioner failed to present any evidence on the issue of whether section 6661(b)(2)(B) should apply to those items which petitioner conceded prior to trial were not deductible. Consequently, the understatement cannot be reduced for those items. Rule 142(a). Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. Plus 50 percent of the interest due with respect to the portion of the underpayment attributable to negligence pursuant to section 6653(a)(2)↩.
1. Respondent's statutory notice either limited or denied several deductions taken by petitioner on his 1984 return. The parties have reached agreement on all these items. ↩
2. All statutory references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedures, except as otherwise noted.↩
3. At some time prior to the year at issue, Scurr, Messenger Associates changed its name to SMLA.↩
4. The parties stipulated these numbers. On his return, petitioner actually reported receiving sales proceeds of $ 138,214.60, and apparently rounded this figure to $ 138,214 in arriving at his reported amount of capital gain.↩
5. The Fairways property appears to have been an ordinary income asset. See sec. 1221(1). Consequently, even if we had found that petitioner and SMLA were joint venturers, petitioner would have been required to report this amount as ordinary income.↩