Opinion by Judge SILVERMAN; Partial Concurrence and Partial Dissent by Judge TASHIMA.
OPINION
SILVERMAN, Circuit Judge:
Bernard Shapiro and Cora Jane Chenchark lived together for twenty-two years, but they never married. Over those twenty-two years, Chenchark cooked, cleaned, and managed their household. When they broke up, she filed a palimony suit against him in state court. While the suit was pending, he died. In the context of this tax refund lawsuit filed by Shapiro’s estate, the district court held that Chenchark’s homemaking services did not, as a matter of law, provide sufficient consideration to support a cohabitation contract between Shapiro and Chenchark, and that therefore, an estate tax deduction for the value of Chenehark’s claim was properly disallowed. Because the district court’s holding was premised upon a misconstruction of Nevada law regarding contracts between cohabitating individuals, we reverse.
I. Background
Shapiro and Chenchark met in 1977 and began dating shortly thereafter. Chenchark moved in with Shapiro in 1978. They lived together for the next twenty-two years, but they never married. During the relationship, Chenchark provided homemaking services to Shapiro, including cooking, cleaning, and managing the household employees, such as the gardener and housekeeper. Shapiro paid for Chenchark’s living expenses and provided her with a weekly spending allowance. Chenchark contributed no financial assets to the household.
In 1999, after learning that Shapiro was involved with another woman, Chenchark sued Shapiro in Nevada state court, claiming breach of express and implied contract, breach of fiduciary duty, and quantum meruit. According to Chenchark’s complaint, she and Shapiro had agreed to pool their resources and to share equally in each others’ assets.
Shapiro died on February 12, 2000, while Chenchark’s action was still pending. Shapiro’s estate filed an estate tax return in May 2001 and paid $10,602,238 in estate tax and generation-skipping transfer tax. The Estate continued to defend against Chenchark’s claim, and in September 2001 a jury returned a verdict in favor of the Estate, specifically finding that Shapiro and Chenchark did not enter into any express or implied contract. Chenchark appealed, and while the appeal was pending the parties settled Chenchark’s claim, along with another lawsuit in which she *1057 contested Shapiro’s will, for approximately $1 million.
In June 2003, some time after settling Chenchark’s claim, the Estate filed an amended estate tax return seeking, among other adjustments, to deduct $8 million from the value of the taxable estate under 26 U.S.C. § 2053(a)(3) for Chenchark’s claim. Based on the amended return, the Estate claimed a refund of approximately $3.5 million. The IRS disallowed any deduction for Chenchark’s claim, and only refunded $361,483 as result of unrelated adjustments.
In August 2006, the Estate brought suit in federal court seeking a refund of approximately $2 million. According to the Estate’s complaint, an expert valued Chenchark’s claim at just over $5 million as of the date of Shapiro’s death. The Estate later amended its complaint to include an additional claim for relief, seeking a refund for the decrease in property value due to notices of lis pendens recorded by Chenchark on Shapiro’s properties during the pendency of her lawsuit. In its amended complaint, the Estate sought a total refund of $4,863,480.
The Estate and the United States filed cross-motions for summary judgment. The district court ruled in favor of the United States, holding that, “[wjithin the uncontested facts, no evidence exists that Chenchark ever contributed anything other than love, support, and management of Shapiro’s household to the relationship. These factors do not provide for sufficient consideration to support a contractual agreement.” The district court went on to conclude that, “because Chenchark did not make sufficient contributions to the Estate to provide consideration for the support she received from Shapiro,” there “was no contract between them, [and] the money she sought in the Contract Action was, in fact, a gift from Shapiro.” As a gift, Chenchark’s claim against the Estate did not qualify as a deduction under § 2053, according to the district court. The court further held that the Estate was judicially estopped from arguing that Shapiro and Chenchark entered an employment agreement of sorts, with Chenchark’s homemaking services as consideration, because the Estate had taken the opposite position in defending against Chenchark’s lawsuit.
II. Discussion
A. Standard of Review
“We review the district court’s grant of summary judgment de novo, to determine whether, viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact and whether the lower court correctly applied the relevant substantive law.” Fed. Trade Comm’n v. Network Servs. Depot, Inc., 617 F.3d 1127, 1138 (9th Cir.2010).
We review the district court’s application of judicial estoppel for abuse of discretion. Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir .2007).
B. Consideration
In determining the value of the taxable estate for purposes of calculating the amount of estate tax owed, the tax code allows a deduction for “claims against the estate ... as are allowable by the laws of the jurisdiction ... under which the estate is being administered.” 26 U.S.C. § 2053(a). In the case of claims against the estate that are founded on a promise or agreement, this deduction is limited “to the extent that they were contracted bona fide and for an adequate and full consideration in money or money’s worth.” Id. § 2053(c)(1)(A).
*1058 Here, the district court concluded as a matter of law that Chenchark’s contributions to the Estate — twenty-two years of cooking, cleaning, and other homemaking services — did not constitute sufficient consideration to allow the Estate to deduct her claim against it. The district court did not base its ruling on an application of § 2053(c)(l)(A)’s requirement that the underlying promise or agreement be contracted “for an adequate and full consideration in money or money’s worth”; instead, the court rejected the Estate’s deduction for Chenchark’s claim based on an incorrect reading of Nevada state law regarding contracts between cohabitating partners. The district court erroneously concluded that Chenchark did not have a valid contract claim under Western States Construction, Inc. v. Michoff, 108 Nev. 931, 840 P.2d 1220 (1992), because her love, support, and homemaking services did not, as a matter of law, provide sufficient consideration to support a contractual agreement.
In recent decades, widespread social acceptance of nonmarital cohabitation has triggered an expansion of cohabitants’ legal rights. In Marvin v. Marvin, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976), a watershed case concerning such rights, the California Supreme Court held that courts should enforce express or implied contracts between nonmarital partners except when such a contract is inseparably based upon the provision of sexual services. Id., 134 CaLRptr. 815, 557 P.2d at 114. “[A]dults who voluntarily live together and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights.... [T]hey may agree to pool their earnings and to hold all property acquired during the relationship in accord with the law governing community property[.]” Id., 134 Cal.Rptr. 815, 557 P.2d at 116.
In Hay v. Hay, 100 Nev. 196, 678 P.2d 672 (1984), the Nevada Supreme Court adopted Marvin’s holding and ruled that unmarried cohabitants may sue to enforce contracts concerning property rights. Id. at 674. Even an implied contract to share property, in which the terms of the agreement are “manifested by conduct,” rather than stated in words, is enforceable. Id. The court reaffirmed the right of cohabitants to contract in Western States Construction, 840 P.2d at 1224. In Western States Construction, the court affirmed the trial court’s finding that Lois Michoff and Max Michoff impliedly agreed to hold then-property as though they were married, based on evidence that the couple filed joint tax returns, designated property as community property in their Subchapter S election form, and signed a spousal consent form for a partnership. Id. at 1224-25.
Here, the district court compared the facts of Chenchark and Shapiro’s relationship to that of Lois and Max Michoff in Western States Construction, and concluded that Chenchark “did not make sufficient contributions to the Estate to provide consideration for the support that she received from Shapiro.” Because Chenchark did not provide sufficient consideration, the court held that Chenchark did not have a valid contract claim. But the Nevada Supreme Court in Western States Construction did not consider the amount or type of consideration necessary to support a contractual agreement between cohabitants — instead, the court just examined Lois and Max’s conduct to determine whether their actions supported the conclusion that they intended to share then-property as though married. Nothing in Western States Construction supports the district court’s conclusion that “love, support, and management of [a] household” cannot, as a matter of law, constitute con *1059 sideration for a promise to share property under Nevada law.
Although the Nevada Supreme Court has not addressed the sufficiency of homemaking services as consideration for a contract to share property, California cases have held that a promise to perform homemaking services is adequate to support such a contract. See, e.g., Chiba v. Greenwald, 156 Cal.App.4th 71, 67 Cal. Rptr.3d 86, 92 (2007) (citing Marvin, 134 Cal.Rptr. 815, 557 P.2d at 113 n. 5); Whorton v. Dillingham, 202 Cal.App.3d 447, 248 Cal.Rptr. 405, 409 (1988). And under Arizona law, which, like Nevada and California, recognizes the right of unmarried cohabitants to contract to share property, homemaking services may constitute adequate consideration for such a contract. Carroll v. Lee, 148 Ariz. 10, 712 P.2d 923, 926-27 (1986). It makes no difference if the parties exchanged “unlike services.” Id. at 926. Given the Nevada Supreme Court’s adoption of Marvin through Hay and Western States Construction, we think it is likely that Nevada would join those California and Arizona courts in holding that homemaking services can be adequate consideration for a property-sharing agreement between cohabitants. We therefore disagree with the district court’s holding that Chenchark did not, as a matter of law, provide sufficient consideration to support a contract under Nevada law.
The United States argues that Chenchark’s claim is not deductible because it is not supported by “adequate and full consideration in money or money’s worth.” We do not disagree with the government’s point that, under § 2053(c)(1)(A), a claim founded on a promise or agreement, like Chenchark’s claim, is only deductible “to the extent [it was] contracted bona fide and for adequate and full consideration in money or money’s worth” — but the district court never reached this specific issue. Homemaking services such as those provided by Chenchark can be quantified and have a value attached to them. Our point is simply that these services are not of zero value as a matter of law, as the district court apparently believed.
This is not to say that, even if a factfinder determines that Chenchark’s claim was supported by “adequate and full consideration,” the Estate is necessarily entitled to the full deduction it seeks. Rather, the value of Chenchark’s claim is a factual issue that precludes summary judgment. The value of the claim (and the corresponding allowable estate tax deduction) remains for the district court to determine on remand. Whether her claim was worth $1 million (as it was eventually settled for) or some other amount is for the district court to decide. Under this court’s precedent, the claim must be valued as of the date of Shapiro’s death. See Estate of Van Home v. C.I.R., 720 F.2d 1114, 1116 (9th Cir.1983); Prapstra v. United States, 680 F.2d 1248, 1254 (9th Cir.1982). For this reason, Chenchark’s deposition testimony from this case — as quoted by our dissenting colleague — is irrelevant to the valuation of her claim. Chenchark’s statements were not made until 2007, more than seven years after Shapiro’s death. All that was known at the time of Shapiro’s death was that Chenchark had asserted a plausible claim under Nevada law.
C. Judicial Estoppel
In addition to holding that the Estate could not deduct any amount for Chenchark’s claim because of the lack of consideration, the district court also held that judicial estoppel prohibited the Estate from arguing that Chenehark’s homemaking services provided consideration for the alleged agreement between Shapiro and Chenchark to share equally in each others’ *1060 property. The district court specifically held:
The application of judicial estoppel is appropriate in this case. The Estate is barred from taking inconsistent positions in accordance with the doctrine of judicial estoppel. It cannot over-claim the value of the suit against it. The value is what it paid for suit in settlement, and no more.
The Estate’s positions in defending against Chenchark’s lawsuit were not inconsistent with any positions it took before the district court in this case. See Yanez v. United States, 989 F.2d 323, 326-27 (9th Cir.1993). The Estate consistently took the position that a contract claim had in fact been asserted against it, a fact that no one denies. The Estate was within its rights to deduct the value of the yet-to-be-determined claim without waiving the right to contest the validity of the claim in state court. Cf. Treas. Reg. § 20.2053-l(b)(3) (2000) (“An item may be entered on the return for deduction though its exact amount is not then known, provided it is ascertainable with reasonable certainty, and will be paid.”).[1]
D. Notices of Lis Pendens
In granting the United States’ motion for summary judgment, the district court did not address the Estate’s claim that it was entitled to a refund as a result of the reduction in property value caused by the notices of lis pendens filed by Chenchark on a number of Shapiro’s properties. But it entered judgment against the Estate on this claim, along with the rest of the case. On appeal, the Estate argues that the district court erred in granting summary judgment on this claim because it was not addressed in the summary judgment motions.
We affirm the district court’s grant of summary judgment on the Estate’s claim for a refund related to the notices of Us pendens. The Estate abandoned this claim by failing to raise it in opposition to the United States’ motion for complete summary judgment. See Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir.2008) (“We have previously held that a plaintiff has ‘abandoned ... claims by not raising them in opposition to [the defendant’s] motion for summary judgment.’”) (quoting Jenkins v. Cnty. of Riverside, 398 F.3d 1093, 1095 n. 4 (9th Cir.2005)).
E. Administrative Expenses
As with the Estate’s claim for a refund related to the notices of lis pendens, the district court did not address the Estate’s claim for a deduction of administrative expenses under § 2053(a)(l)(i). Also like the lis pendens claim, the Estate failed to raise this issue in opposition to the United States’ motion for summary judgment. But the United States noted in its answering brief that it has no objection to a remand to allow the district court to address the deductibility of administrative expenses. Therefore we instruct the district court to address this issue on remand.
III. Conclusion
For the foregoing reasons, we REVERSE the district court’s grant of summary judgment on the Estate’s claim that it is entitled to deduct the value of Chenchark’s claim; AFFIRM summary judgment on the Estate’s claim for a refund arising out of the notices of lis pendens *1061 recorded on Shapiro’s properties by Chenehark; and REMAND.
Each party shall bear its own costs on appeal.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

. The regulation in effect at the time of Shapiro’s death required the Estate to value the claim as of the date of death, even if there were uncertainty about the amount. We note that in 2009, the regulations changed, requiring an estate to wait and see about the value of a contested, unliquidated claim. See Treas. Reg. § 20.2053-1 (d) (as amended in 2009).