**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARSHALL NAIFY REVOCABLE
TRUST; MICHAEL NAIFY, Trustee,
successor in interest to the Estate
of Marshall Naify,
        *Plaintiffs-Appellants,*

                v.

UNITED STATES OF AMERICA,
        *Defendant-Appellee.*

No. 10-17358

D.C. No.
3:09-cv-01604-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
December 9, 2011—San Francisco, California

Filed February 15, 2012

Before: Arthur L. Alarcón, Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Alarcón

## COUNSEL

G. Michael Halfenger (argued), Foley & Lardner LLP, Milwaukee, Wisconsin; Thomas F. Carlucci, Foley & Lardner LLP, San Francisco, California; Joseph G. Wolberg, Kentfield, California, for the appellants.

Jennifer M. Rubin, United States Department of Justice, Tax Division/Appellate Section, Washington, D.C., for the appellee.

---

## OPINION

ALARCÓN, Senior Circuit Judge:

This is a federal estate tax refund action. Before his death in 2000, Marshall Naify ("Naify") took considerable steps to avoid paying California income tax on $660 million in capital gains.[1] After his death, the estate of Marshall Naify ("Estate") deducted $62 million on its federal estate tax return for the *estimated amount* of California income tax that it might owe on the $660 million gain if Naify's California tax avoidance plan failed. The IRS disallowed the deduction. The Marshall Naify Revocable Trust ("Trust"), successor in interest to Naify's Estate, sued for a refund. The district court granted the Government's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Trust appeals that decision. After reviewing the record and briefs, we affirm.

## I

Naify was a longtime California resident until his death in April 2000.[2] In December 1998, Naify began implementing a plan to avoid paying California income tax on gains he expected to realize from converting his Telecommunications Inc. ("TCI") notes into AT&T stock after TCI merged into AT&T. As part of the plan, Naify formed Mimosa, Inc. ("Mimosa") as a Delaware corporation. He became its sole

---

[1] We have rounded dollar amounts to the nearest $1 million.

[2] We have relied on the factual allegations in the Trust's complaint, along with the exhibits attached thereto and incorporated by reference.

shareholder, and took steps to ensure that Mimosa did not operate in California. Naify then transferred his TCI notes to Mimosa. After TCI merged into AT&T, Mimosa converted the TCI notes into AT&T stock, which led to a gain of $660 million.

After Naify's death, his Estate filed Naify's California personal income tax return for the 1999 tax year. Naify's return did not report the $660 million gain as taxable income. Consequently, his return did not reflect that any California income tax was due on the $660 million gain nor that he had paid California income tax on that gain.

Nearly a year later, in July 2001, Naify's Estate filed its federal estate tax return. At the time the Estate filed its return, the California Franchise Tax Board ("FTB") had not asserted a claim against the Estate for California income tax on the $660 million gain. In its return, however, the Estate deducted, as a claim against the estate, $62 million for the *estimated amount* of California income tax that Naify might owe if his California tax avoidance plan failed.

Three months later, the FTB initiated an audit of Naify's California personal income tax return for the 1999 tax year. In July 2003, the FTB issued a notice of proposed assessment in which it asserted that Naify's Estate owed $58 million, plus interest and penalties, for California income tax on the $660 million gain. Naify's Estate disputed that it owed California income tax on the $660 million gain. After lengthy negotiations, in 2004, the Estate settled the California income tax claim for $26 million, $7 million of which was interest.

Meanwhile, in early 2003, the IRS had initiated an audit of the Estate's federal estate tax return. The IRS disallowed the Estate's deduction of $62 million for the *estimated amount* of California income tax that Naify's Estate might owe if his California tax avoidance plan failed. After the Estate settled with the FTB, however, the IRS allowed the Estate to deduct

the $26 million it paid to settle the California income tax claim. As a result of the adjusted deduction, the Estate paid a federal estate tax deficiency of $11 million.

In March 2006, the Estate filed a claim with the IRS for a refund of the $11 million tax deficiency it paid when the IRS adjusted its deduction for the California income tax claim. In its claim, the Estate sought to adjust the deduction from $26 million to $47 million. In order to arrive at the $47 million value, the Estate discounted the $62 million that it believed that Naify owed in California income tax on the $660 million by 67%, which was the probability, according to the Trust's expert, that Naify's tax plan would fail.[3] The IRS rejected the Estate's claim: it concluded that the California income tax claim was contingent and disputed and, thus, the amount of the deduction for the claim was limited to the $26 million the Estate paid post-death to settle the claim.

In April 2009, the Trust, as successor in interest to Naify's Estate, filed a complaint against the Government in district court. The Trust's complaint asserted a single claim for refund of federal estate taxes based on its allegation that the value of the FTB's claim against the Estate for California income tax, as of the date of Naify's death, was $47 million. After the Government filed its answer, it moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted the Government's Rule 12(c) motion because, *inter alia*, the Trust's complaint did not show that the *estimated amount* of the deduction for the California income tax claim was ascertainable with reasonable certainty as of the date of Naify's death and, as a result, the Trust's deduction was limited to the $26 million it paid to settle the claim.

---

[3]In an order issued before oral argument, we pointed out that the product of multiplying $62 million by 67% is $41 million, not $47 million. In response, the Trust conceded that it had misstated the estimated amount of the California income tax claim and clarified that it sought a deduction of $41 million, not $47 million.

The district court entered judgment against the Trust on September 15, 2010. The Trust filed its timely Notice of Appeal on October 15, 2010. The district court had jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We review de novo a district court's order granting a Rule 12(c) motion for judgment on the pleadings. *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

## III

We begin our discussion with a brief overview of federal estate tax deductions for claims against an estate. We then turn to the merits of the Government's motion.[4]

### A

[1]  The federal "estate tax is a tax on the privilege of transferring property upon one's death . . . ." *Propstra v. United States*, 680 F.2d 1248, 1250 (9th Cir. 1982). The federal estate tax is imposed on the decedent's taxable estate. 26 U.S.C. §§ 2001(a), 2053(a). The taxable estate is determined by reducing the gross estate by deductions allowable under the Internal Revenue Code. 26 U.S.C. § 2053(a).

[2] Claims against the estate are one type of deduction allowable under the Internal Revenue Code. 26 U.S.C.

---

[4]Because we affirm on the grounds set forth in Section III.B., we need not address the Trust's other challenges to the district court's order dismissing this action.

§ 2053(a)(3). Claims against the estate are "personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death." Treas. Reg. § 20.2053-4.**⁵** Only claims that are "enforceable against the decedent's estate may be deducted." *Id.*; *see Estate of DuVal v. Comm'r*, 4 T.C. 722, 725 (1945) (recognizing that a claim is an assertion of a right and if there is no assertion of a right, there is no claim to deduct), *aff'd*, 152 F.2d 103 (9th Cir. 1946). Tax obligations are deductible, if at all, as claims against the estate. Treas. Reg. § 20.2053-6(a).

**B**

The Trust contends that the district court erred when it determined that the *estimated amount* of the California income tax claim could not be deducted because it was not ascertainable with reasonable certainty as of the date of Naify's death and, as a result, its deduction was limited to the $26 million it paid to settle the claim.

**1**

**[3]** The Treasury Regulations mandate that, in order to deduct the *estimated amount* of a claim against the estate, the estate must show that it is, *inter alia*, "ascertainable with reasonable certainty."**⁶** Treas. Reg. § 20.2053-1(b)(3). An estate cannot deduct a claim based on a vague or uncertain estimate. *Id.*; *see, e.g.*, *Estate of Saunders v. Comm'r*, 136 T.C. 406,

---

**⁵**In 2009, the IRS amended the relevant Treasury Regulations. The 2009 amendments, however, apply to the estates of decedents who died on or after October 20, 2009. *See* T.D. 9468, 2009-2 C.B. 570. On appeal, the parties agree that 2009 amendments do not apply because Naify died in April 2000. Thus, all citations to § 2053 regulations are to the pre-2009 version.

**⁶**The 2009 amendments to the Treasury Regulations modified this section to make it clear that contested and contingent claims are not ascertainable with reasonable certainty. Treas. Reg. § 20.2053-1 (2009).

422 (2011) (explaining that "stating and supporting a value is not equivalent to ascertaining a value with reasonable certainty"). If a claim's value is not ascertainable with reasonable certainty, but later becomes certain, an estate may petition the tax court or file a claim for a refund. Treas. Reg. § 20.2053-1(b)(3).

**[4]** Here, the Trust's pleading demonstrates that the *estimated amount* of the California income tax claim was not ascertainable with reasonable certainty as of the date of Naify's death. The Trust cannot rely on its allegation that "[o]n the date of Marshall Naify's death, April 19, 2000, the amount of Plaintiff's California tax liability was ascertainable with reasonable certainty" because that is not a factual allegation. Rather, it is a legal conclusion that we need not accept as true. *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) ("We do not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").

**[5]** As for the Trust's other allegations in its pleading, they show that the FTB had not asserted, nor assigned a value to, the California income tax claim as of the date of Naify's death. As the district court recognized, several post-death events would need to have occurred in order for Naify's California income tax liability on the $660 million gain to come due. The FTB would need to, *inter alia*, (1) assert the California income tax claim by initiating an audit of Naify's 1999 California income tax return, (2) find that Mimosa was not a valid Nevada corporation, and (3) issue a California income tax deficiency notice. Given that the claim was subject to several contingencies, all of which could have affected its value, the estimated amount of the California tax claim, as of the date of Naify's death, was inherently uncertain.

The Trust's general assertion that the 146 paragraph factual summary attached to its complaint shows that it satisfies the certainty requirement is not persuasive. The Trust has not

identified any specific facts in the summary that show that the *estimated amount* of the California income tax claim was ascertainable with reasonable certainty as of the date of Naify's death. The factual summary actually shows that, as of his death, Naify had taken considerable steps to form and operate Mimosa as a Nevada corporation so as to avoid paying California income tax on the $660 million gain.

Contrary to the Trust's assertion, the expert report attached to its complaint does not establish that the *estimated amount* of the claim was ascertainable with reasonable certainty as of the date of Naify's death. The expert's opinion, along with the Trust's own allegations, actually show that the claim was contingent and had a range of possible values between $0 and $62 million.

According to the Trust's expert, Naify's California tax avoidance plan had a 67% likelihood of failure, which leads to the inescapable conclusion that his plan also had a 33% chance of success. If his plan succeeded, the California income tax claim might never be asserted or paid. If his plan failed, there is nothing suggesting that the amount of the claim was reasonably certain to be $47 million, as opposed to some other amount. As the district court recognized, "it cannot be that simply because one can assign a probability to any event and calculate a value accordingly, any and all claims are reasonably certain and susceptible to deduction. To so hold would read the regulatory restriction out of existence." *Marshall Naify Revocable Trust v. United States*, No. C 09-1604 CRB, 2010 WL 3619813, at *5 (N.D. Cal. Sept. 9, 2010) (footnote omitted).

**[6]** Whether an action "can be dismissed on the pleadings depends on what the pleadings say." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997). Here, the pleadings "say" that, as of Naify's death, (1) the FTB had not asserted a claim against Naify for the California income tax on the $660 million gain, (2) Naify had taken significant steps

to avoid California income tax on the $660 million gain, (3) Naify had not reported the $660 million gain as California taxable income, (4) Naify had not paid California income tax on the $660 million gain, (5) according to a post-death expert opinion rendered six years after Naify's death, Naify's California tax avoidance plan had a 67% likelihood of failure and, consequently, a 33% likelihood of success, and (6) the Estate initially estimated the amount of the California income tax claim, as of Naify's death, as $62 million. Given these allegations, the district court properly concluded, as a matter of law, that the estimated amount of the claim was not ascertainable with reasonable certainty as of Naify's death.

As for the Trust's argument that the district court misconstrued the certainty requirement by assuming that "ascertainable with reasonable certainty" applied to the *estimated amount of the claim*, as opposed to the *claim* itself, the Trust has not supported its reading of Treasury Regulation § 20.2053-1(b)(3) with citation to binding or persuasive authority. Indeed, relevant authority directly contradicts the Trust's proposed reading of this requirement. *See, e.g.*, *Estate of Van Horne v. Comm'r*, 720 F.2d 1114, 1116-17 (9th Cir. 1983) (applying certainty requirement to *estimated amount of the claim*); *Axtell v. United States*, 860 F. Supp. 795, 798 (D. Wyo. 1994) (stating "[w]here the amount of a section 2053 deduction is not known, the deduction may nevertheless be taken if the *amount* is ascertainable with reasonable certainty and will be paid" (emphasis added)); *Estate of Bailly v. Comm'r*, 81 T.C. 246, 250-51 (1983) (applying certainty requirement to *amount* of § 2053(a) deduction).

Finally, the Trust's reliance on two out-of-circuit cases, *O'Neal v. United States*, 258 F.3d 1265 (11th Cir. 2001) and *Estate of Smith v. Comm'r*, 198 F.3d 515 (5th Cir. 1999), is not persuasive. Unlike this case, which involves a contingent claim, *Estate of Smith* and *O'Neal* involve definite claims brought against the estate, but which the estates had disputed. *See O'Neal*, 258 F.3d at 1267 (claim for gift tax deficiency

was asserted, partially paid, and disputed in court proceedings before decedent's death); *Estate of Smith*, 198 F.3d at 519 (litigation was pending at the time of decedent's death and claim was disputed). Additionally, neither case announces a workable rule for using expert evidence to determine whether the estimated amount of a *contingent* claim is ascertainable with reasonable certainty. *See O'Neal*, 258 F.3d at 1275 (remanding to district court to recalculate deduction for disputed claim because district court erred by considering post-death events when valuing claim); *Estate of Smith*, 198 F.3d at 526 (rejecting distinction between certain and enforceable claims and disputed or contingent claims and remanding to district court to recalculate value of disputed claim because district court erred by considering post-death events when valuing claim).

**2**

**[7]** We have never concluded that there is a complete bar to considering post-death events when valuing a disputed or contingent claim. Quite the contrary, we have interpreted the United States Supreme Court's decision in *Ithaca Trust Co. v. United States*, 279 U.S. 151 (1929), along with the relevant statutes and Treasury Regulations, as allowing a court to consider post-death events when valuing a disputed or contingent claim against an estate. *See Estate of Shedd v. Comm'r*, 320 F.2d 638, 639-40 (9th Cir. 1963) (considering post-death events when evaluating deduction for disputed and contingent claim) *aff'g* 37 T.C. 394 (1961); *Estate of DuVal v. Comm'r*, 152 F.2d 103, 104 (9th Cir. 1945) (considering post-death events when evaluating deduction for contingent claim) *aff'g* 4 T.C. 722; *see Propstra*, 680 F.2d at 1253 (distinguishing certain and enforceable claims from disputed or contingent claims); *see also Estate of Van Horne*, 720 F.2d at 1116-17 (same).

Indeed, in *Estate of Shedd*, we explained that *Ithaca Trust*'s conclusion that "[t]he estate so far as may be is settled as of the date of the testator's death," 279 U.S. at 155, is not a for-

mulation of "[i]mmutable principle," but simply a statement "of the understanding of the courts that the general intention of Congress is that the federal estate tax shall be computed on the basis of the estate's value at the moment the taxable event (the transfer at death) occurs." *Estate of Shedd*, 320 F.2d at 639. We further explained that "Congress did not intend to make events at the date of death invariably determinative in computing the federal estate tax obligation" and that "when it appears that the intent of Congress will be served by considering events subsequent to death for this purpose the courts have not hesitated to do so." *Id.*

**[8]** In *Propstra*, we stated that "[t]he law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims."[7] *Propstra*, 680 F.2d at 1253. The Trust attempts to avoid the consequences of this Court's precedent by arguing that our statement in *Propstra*, that a court can consider post-death events when valuing disputed or contingent claims, is dicta. We disagree.

In *Propstra*, we addressed the question of whether an estate could deduct the full value of undisputed pre-death liens against a decedent's real property even though the estate later settled the lien claims for less than their full value. *Propstra*, 680 F.2d at 1253-54. We began our analysis by stating that in order to determine whether a court could consider the post-death settlement in valuing the lien claims, we needed to assess the nature of the claims to determine if they were disputed or contingent. *Id.* at 1253. We explained our view, in light of the precedent and the Treasury Regulations, of the rel-

---

[7]There is a circuit split regarding whether a court can consider post-death events when valuing disputed or contingent claims. *Compare Gowetz v. Comm'r*, 320 F.2d 874, 876 (1st Cir. 1963) (stating that court can consider post-death events when valuing a disputed claim), *and Estate of Jacobs v. Comm'r*, 34 F.2d 233, 236 (8th Cir. 1929) (considering post-death events when valuing contingent claim), *with O'Neal*, 258 F.3d at 1275 (stating that court cannot consider post-death events when valuing a disputed claim), *and Estate of Smith*, 198 F.3d at 529 (same).

evance of post-death events when valuing contingent or disputed claims:

> The law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims. *See* Treas. Reg. § 20.2053-1(b)(3) ("No deduction may be taken on the basis of a vague or uncertain estimate."). *See also Estate of DuVal v. Commissioner*, 4 T.C. 722 (1945), *aff'd*, 152 F.2d 103 (9th Cir.) *cert. denied*, 328 U.S. 838, 66 S. Ct. 1013, 90 L.Ed. 1613 (1946). Less certain is the relevance of post-death events with regard to claims that are certain and enforceable at the time of death.

*Id.*

We concluded, in *Propstra*, that the lien claims were neither disputed nor contingent and proceeded to evaluate the relevant statutes, regulations, and case law. *Id.* at 1254. We held that "as a matter of law, when claims are for sums certain and are legally enforceable as of the date of death, post-death events are not relevant in computing the permissible deduction." *Id.* In so doing, this court distinguished *Jacobs v. Comm'r*, 34 F.2d 233 (8th Cir. 1929), in which the Eighth Circuit held that a court could consider post-death events when valuing *all* claims against an estate. *Id.* at 1256. Specifically, we explained that the lien claims were unlike the widow's claim in *Jacobs* because the widow's claim "was not certain and enforceable; it was contingent." *Id.*

The holding of *Propstra* is clear: an estate cannot look to post-death events when valuing a claim against the estate that is certain and enforceable as of the date of death. *Id.* at 1254. We distinguished disputed and contingent claims from certain and enforceable claims based on the Treasury Regulations, which prohibit deducting vague or uncertain claims. *Id.* at 1253. We also cited *Estate of DuVal*, in which we affirmed

a tax court that considered post-death events to disallow a deduction for a contingent claim. *Id.*

The Trust has not shown that the relevant language in *Propstra* is dicta. We have explained that "[w]hile we have used a number of verbal formulations to describe 'dictum,' we treat reasoning central to a panel's decision as binding later panels." *Sanchez v. Mukasey*, 521 F.3d 1106, 1110 (9th Cir. 2008). Consequently, "[u]nder our circuit's law, when a panel selects a single line of reasoning to support its result, the reasoning cannot be ignored as dictum." *Id.*

This court's reasoning in *Propstra* that only contingent or disputed claims could be valued by considering post-death events supported its ultimate holding. *Propstra*, 680 F.2d at 1253-54. We also relied on this reasoning to distinguish contrary authority. *Id.* at 1256. For example, we analyzed whether the lien claims were disputed or contingent based on our statement that post-death events are relevant when valuing such claims. *Id.* at 1253-54. In addition, we distinguished *Jacobs*, which allows courts to look to post-death events, on the grounds that *Jacobs* involved a contingent claim. *Id.* at 1256.

**[9]** Since our decision in *Propstra*, we have not expressly departed from, nor expanded, our holding in that case. We have similarly not departed from our view of the distinction between certain and enforceable claims and contingent or disputed claims. For example, in *Estate of Van Horne*, this court applied the holding in *Propstra* to value an undisputed and non-contingent pre-death spousal support order as of the date of the decedent's death. *Estate of Van Horne*, 720 F.2d at 1115-16. We, along with the tax court whose opinion we were reviewing, continued to distinguish certain and enforceable claims from disputed and contingent claims. *Id.*; *Estate of Van Horne v. Comm'r*, 78 T.C. 728, 735 (1982) (recognizing distinction between a certain and enforceable claim and a "potential, unmatured, contingent, or contested claim"). Indeed,

in *Estate of Van Horne*, we rejected the government's argument that the spousal support order was contingent. *Estate of Van Horne*, 720 F.2d at 1116.

More recently, in *Shapiro v. United States*, 634 F.3d 1055 (9th Cir. 2011), we cited *Propstra* for the general proposition that claims against the estate are valued as of the date of death. The Trust contends that, under *Shapiro*, the district court could not consider the $26 million post-death settlement as dispositive of the California income tax claim's value. We disagree.

In *Shapiro*, we considered whether love, support, and homemaking services provided by a cohabitant to her partner were sufficient consideration to support a contract claim against an estate. *Shapiro*, 634 F.3d at 1059. We concluded that the district court erred when it held that such services were not, under Nevada law, sufficient consideration to support a contract claim against the estate. *Id.* In reversing the district court's order granting summary judgment, we remanded for the district court to determine the value of the cohabitant's claim. *Id.*

The Trust relies heavily on this court's conclusion in *Shapiro* that the value of the contract claim was a factual issue that precluded summary judgment. The Trust reads our holding in *Shapiro* too broadly. As we previously discussed in Section III.B.1., whether an action can be dismissed on the pleadings depends on what the pleadings say.

Unlike this case, *Shapiro* did not involve a contingent claim. *Id.* at 1056. In fact, in *Shapiro*, we did not address the distinction in the Ninth Circuit between certain and enforceable claims and disputed or contingent claims. Nonetheless, the Trust suggests that *Shapiro*'s discussion of valuing the contract claim as of the date of death signaled a departure from our precedent that distinguishes between certain and enforceable claims and disputed or contingent claims. The

Trust, however, fails to recognize that, as a three-judge panel, the court in *Shapiro* could not reconsider or overrule the precedent established in *Estate of Shedd*, *Estate of DuVal*, and *Propstra*. *See United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992) ("As a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel.").

According to the Trust, even if the district court could consider post-death events under *Propstra*, it nonetheless erred when it determined that the Trust's deduction was limited to the $26 million it paid to settle the California tax claim. We disagree.

[10] The Treasury Regulations suggest that a post-death settlement is dispositive of a claim's value. Treas. Reg. § 20.2053-1(b)(3). According to the Regulations, an estate can deduct a claim, which initially had an uncertain value, once its value becomes certain. *Id.* According to the Trust's factual allegations, the California income tax claim's value became certain when the Trust settled the claim. The Trust has not pointed to any other allegation that suggests the claim's value became certain due to any other event. Consequently, we agree with the district court that the settlement amount was dispositive because it "determine[d] as a factual matter how much the claim against the estate [was] worth and [was] the only moment at which the value of the claim [became] 'certain.'" *Marshall Naify Revocable Trust*, 2010 WL 3619813, at *7 n.9.

## CONCLUSION

[11] We are persuaded that the district court did not err in granting the Government's Rule 12(c) motion for judgment on the pleadings and dismissing this action.

**AFFIRMED.**