**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTATE OF GERTRUDE H. SAUNDERS, Deceased; RICHARD RIEGELS, Co-Executor; WILLIAM SAUNDERS, Co-Executor, *Petitioners-Appellants*, | No. 12-70323<br><br>Tax Ct. No. 10957-09 |
| v. | OPINION |
| COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellee*. | |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
February 13, 2014—San Francisco, California

Filed March 12, 2014

Before: Consuelo M. Callahan and Milan D. Smith, Jr.,
Circuit Judges, and Alvin K. Hellerstein, Senior District
Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

* The Honorable Alvin K. Hellerstein, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Tax

The panel affirmed the tax court's decision disallowing an estate's deduction based on a claim that was disputed at the date of the decedent's death and for which the estimated value on that date was not ascertainable with reasonable certainty, but allowing a deduction of the subsequent settlement amount.

### COUNSEL

Thomas R. Daniel, Esq. (argued), Gelber, Gelber & Ingersoll, Honolulu, Hawaii, for Petitioners-Appellants.

Kathryn Keneally, Jonathan S. Cohen, and Jennifer M. Rubin (argued), Tax Division, Department of Justice, Washington, D.C., for Respondent-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

M. SMITH, Circuit Judge:

In this appeal from the tax court, we consider whether the Estate of Gertrude Saunders (the Estate) properly claimed a $30 million deduction on its estate tax return for a lawsuit pending at the time of Gertrude Saunders' death (the Stonehill Claim, or the Claim), even though the suit ultimately settled for a smaller sum. The Commissioner of Internal Revenue (the Commissioner) disallowed the $30 million deduction. Because the estimated value of the Stonehill Claim at the time of Gertrude Saunders' death was not ascertainable with reasonable certainty, the tax court properly upheld the Commissioner's disallowance of the $30 million deduction, but allowed a deduction in the amount for which the Claim settled. We therefore affirm the decision of the tax court.

## FACTUAL AND PROCEDURAL BACKGROUND

William Saunders, Sr., an attorney residing in Hawaii, died on November 2, 2003. His wife, Gertrude Saunders, died slightly more than one year later, on November 27, 2004.

## I.  The Stonehill Claim

Prior to his death, William Saunders represented Harry S. Stonehill. On September 24, 2004—after the deaths of both Stonehill and William Saunders—Stonehill's estate filed suit in Hawaii state court against the estate of William Saunders. Stonehill's estate asserted that William Saunders committed legal malpractice, breach of confidence, breach of the duty of

loyalty, and fraudulent concealment in connection with his representation of Stonehill. Specifically, Stonehill's estate alleged that William Saunders provided damaging information about Stonehill to the Internal Revenue Service, thereby breaching the fiduciary duty he owed to Stonehill, and allegedly exposing Stonehill to considerable tax liability. Stonehill's estate sought to recover damages of at least $90 million.[1]

A jury trial on the Stonehill Claim began on May 28, 2007—several years after Gertrude Saunders' death—and the jury delivered its verdict about six weeks later. While the jury determined that William Saunders had breached his duties to Stonehill, it also concluded that William Saunders' misconduct did not cause any damages to Stonehill or his estate. The Stonehill estate appealed. Thereafter, while the appeal was pending, the parties to the Stonehill Claim settled their dispute. Under the terms of the settlement, William Saunders' estate agreed to pay $250,000 in exchange for a complete release from liability.

## II. The Challenged Deduction

At the time of Gertrude Saunders' death on November 27, 2004, the Stonehill Claim remained pending and contested. On February 23, 2006, her Estate filed its Form 706 estate tax return. In connection with that return, the Estate deducted $30 million for the estimated date-of-death value of the Stonehill Claim. The Estate based the amount of its

---

[1] On the same day that it brought the Stonehill Claim in state court, Stonehill's estate also filed suit against William Saunders' estate in the U.S. District Court for the District of Hawaii. The federal case was dismissed shortly thereafter, but the state-court action proceeded.

deduction for the Stonehill Claim on an August 30, 2005 appraisal letter prepared by attorney John Francis Perkin.[2]

On February 10, 2009, the Commissioner issued a Notice of Deficiency to the Estate. In that Notice, the Commissioner asserted that the Estate had improperly deducted $30 million for the Stonehill Claim, and that its return therefore reflected an estate tax deficiency of $14.4 million.[3]

## III.    Prior Proceedings

On May 8, 2009, the Estate petitioned in tax court for redetermination of the deficiency claimed by the Commissioner. To support their respective positions, the parties proffered expert reports to the court, each of which endeavored to assign a date-of-death value to the Stonehill Claim. The Estate submitted two letters from Perkin, and reports from Philip M. Schwab and James J. Bickerton. The Commissioner countered with reports from James E. King and James E. McCann.

---

[2] Even though the Stonehill Claim was pending against William Saunders' estate rather than Gertrude Saunders' estate, the parties agreed that the deductibility of the Claim would be resolved in connection with Gertrude Saunders' estate. As the tax court observed, "the parties have assumed that the valuation date is the date of [Gertrude Saunders'] death, rather than the date of [William] Saunders' death, because of the agreement closing the [William] Saunders estate." *Estate of Saunders v. Comm'r*, 136 T.C. 406, 418 (2011).

[3] The Commissioner acknowledged that the Estate could properly deduct $1,921,745 in attorney's fees and costs incurred in connection with the Stonehill Claim. That determination is not at issue here.

### A.  Expert Valuations

The experts' opinions varied widely.  As noted above, Perkin opined in his 2005 letter that, given the "the wide range of unknowns as of November 2003," the Stonehill Claim was worth $30 million at the date of William Saunders' death. He acknowledged, however, that an adverse judgment on the Stonehill Claim could result in liability ranging "between one dollar ($1) and ninety million dollars ($90,000,000)."   In his 2009 letter, Perkin revised his valuation downward to $25 million.  Relying on information from Perkin, Schwab calculated what he termed the "aggregate weighted monetary value of all outcomes" as of the date of Gertrude Saunders' death.  Using this approach, he valued the Stonehill Claim at $19.3 million.    Finally, Bickerton determined that the Claim was worth at least $22.5 million when it was filed.

The Commissioner's experts calculated much lower estimates.  According to King, the Claim was worth, at most, $3.06 million on the date of Gertrude Saunders' death.  Relying on information from King, McCann assigned the Stonehill Claim a value of $3.2 million, $6.3 million, or $7.5 million as of that date, depending on the damages award assumed.

### B.  The Tax Court's Decision

The tax court handed down its opinion on April 28, 2011, concluding that the Commissioner properly disallowed the Estate's $30 million deduction for the Stonehill Claim. Instead, the tax court determined that the Estate could deduct the amount actually paid in connection with the Claim.  On December 30, 2011, the tax court entered a decision finding

an estate tax deficiency of $12,400,223.  The Estate timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 26 U.S.C. § 7482.  We review the tax court's  legal conclusions, including its interpretation of the Internal Revenue Code and Treasury Regulations, de novo.  *Metro Leasing & Dev. Corp. v. Comm'r*, 376 F.3d 1015, 1021 (9th Cir. 2004) (citing *Boeing Co. v. United States*, 258 F.3d 958, 962 (9th Cir. 2001)).

## DISCUSSION

### I.  Legal Framework

"The federal estate tax is a tax on the privilege of transferring property upon one's death."  *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Propstra v. United States*, 680 F.2d 1248, 1250 (9th Cir. 1982)) (internal punctuation omitted).  To determine the value of the taxable estate, the gross estate is reduced by any deductions allowable under the Internal Revenue Code.  26 U.S.C. § 2053(a).  "Claims against the estate are one type of deduction allowable under the Internal Revenue Code."  *Naify*, 672 F.3d at 623 (citing 26 U.S.C. § 2053(a)(3)).

### A.  Treasury Regulations

Treasury Regulations applicable at the time of Gertrude Saunders' death clarify the deductibility of claims against an

estate.[4]  Under these Regulations, claims against an estate are "personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death."   Treas. Reg. § 20.2053-4.   Further, "[o]nly claims that are 'enforceable against the decedent's estate may be deducted.'"   *Naify*, 672 F.3d at 623 (quoting Treas. Reg. § 20.2053-4).

Of course, the exact value of a claim pending against an estate at the time of the decedent's death is not always known.   Recognizing this, the Regulations permit an estate to deduct the estimated value of such a claim in some circumstances.   *See* Treas. Reg. § 20.2053-1(b)(3).   "The Treasury Regulations mandate that, in order to deduct the *estimated amount* of a claim against the estate, the estate must show that it is, *inter alia*, 'ascertainable with reasonable certainty.'"   *Naify*, 672 F.3d at 624 (quoting Treas. Reg. § 20.2053-1(b)(3)).   Further, the Regulations provide that the estimated amount of a claim is deductible only if the amount "will be paid."   Treas. Reg. § 20.2053-1(b)(3).   Thus, the Treasury Regulations preclude an estate from deducting "a claim based on a vague or uncertain estimate."   *Naify*, 672 F.3d at 624 (citing Treas. Reg. § 20.2053-1(b)(3)).   Rather, if a claim's estimated value at the date of death is not ascertainable with reasonable certainty, but becomes certain post-mortem, "an estate may petition the tax court or file a

---

[4] In 2009, the IRS amended the applicable Treasury Regulations, but the amendments "apply to the estates of decedents who died on or after October 20, 2009."  *Naify*, 672 F.3d at 623 n.5 (citing T.D. 9468, 2009-2 C.B. 570).  As the parties agree, the new Regulations do not apply here. Accordingly, all citations to the Regulations refer to the versions applicable in 2004.

claim for a refund." *Naify*, 672 F.3d at 624 (citing Treas. Reg. § 20.2053-1(b)(3)).

### B.  Case Law

We have applied the Regulations at issue in this case several times.  In so doing, we have classified claims as either "certain and enforceable," on the one hand, or "disputed or contingent," on the other.  *See Naify*, 672 F.3d at 626–28. This distinction governs whether courts may consider post-death events—such as the settlement here—when determining the permissible deduction for claims against an estate.  In *Propstra*, we held that "when claims are for sums certain and are legally enforceable as of the date of death, post-death events are not relevant in computing the permissible deduction." *Propstra*, 680 F.2d at 1254.  We also held, however, that "post-death events *are* relevant when computing the deduction to be taken for disputed or contingent claims." *Id.* at 1253 (emphasis added).  Thus, under our case law, courts may "consider post-death events when valuing a disputed or contingent claim against an estate." *Naify*, 672 F.3d at 626.

Our distinction between certain and enforceable claims and disputed or contingent claims flows naturally from the text of the governing Treasury Regulations.  When, as in *Propstra*, a certain and enforceable claim is pending against an estate at the date of the decedent's death, it follows that the estimated date-of-death value of such a claim is "ascertainable with reasonable certainty."  Treas. Reg. § 20.2053-1(b)(3); *see also Estate of Van Horne v. Comm'r*, 720 F.2d 1114, 1116–17 (9th Cir. 1983) (declining to consider post-death events in computing deduction for undisputed spousal support obligation).  When, however, a

claim is disputed or contingent, its estimated date-of-death value is far less likely to be reasonably ascertainable. *See Propstra*, 680 F.2d at 1253 (basing distinction on Regulations' disallowance of deductions for vague or uncertain estimates). In such circumstances, estates must "petition the tax court or file a claim for a refund" once the claim's value "later becomes certain." *Naify*, 672 F.3d at 624 (citing Treas. Reg. § 20.2053-1(b)(3)).

## II. Status of the Stonehill Claim at the Date of Gertrude Saunders' Death

According to the Estate, the Stonehill Claim was "certain and enforceable" at the date of Gertrude Saunders' death. As such, the Estate asserts that the Claim's estimated date-of-death value was ascertainable with reasonable certainty as a matter of law. We disagree.

### A. Claim Classification

In its opinion, the tax court did not expressly classify the Stonehill Claim as either "certain and enforceable" or "disputed or contingent." As the Estate observes, this analysis appears, at least superficially, to contravene the claim-classification dichotomy established in *Propstra* and reaffirmed in *Naify*. The *Propstra* case concerned "whether an estate could deduct the full value of undisputed pre-death liens against a decedent's real property even though the estate later settled the lien claims for less than their full value." *Naify*, 672 F.3d at 627 (citing *Propstra*, 680 F.2d at 1253–54). We began our analysis in *Propstra* by stating that "[a]s a preliminary matter we must determine the nature of the lien claims against the estate." *Propstra*, 680 F.2d at 1253. We then explained that the nature of the claims—i.e.,

whether they were "certain and enforceable" or "disputed or contingent"—determined whether "post-death events are relevant" in computing the allowable deduction. *Id.* Nearly thirty years after deciding *Propstra*, we reaffirmed the vitality of "our precedent that distinguishes between certain and enforceable claims and disputed or contingent claims." *Naify*, 672 F.3d at 628.

Here, although the tax court declined to follow the *Propstra* framework explicitly, its failure to do so was inconsequential. For the reasons discussed below, the Stonehill Claim was "disputed" at the time of Gertrude Saunders' death. As such, the tax court properly considered post-death events in computing the allowable deduction.[5]

## B. The Stonehill Claim was not "Contingent," but it was "Disputed"

The Estate is correct that the Stonehill Claim was not "contingent" as that term has been used in our case law. In *Naify*, we explained that a claim against an estate is contingent if it is unasserted. *See Naify*, 672 F.3d at 625–26 (citing *O'Neal v. United States*, 258 F.3d 1265 (11th Cir. 2001), and *Estate of Smith v. Comm'r*, 198 F.3d 515 (5th Cir.

---

[5] The Estate argues that considering post-death events in these circumstances violates the Supreme Court's mandate that "[t]he estate so far as may be is settled as of the date of the testator's death." *Ithaca Trust Co. v. United States*, 279 U.S. 151, 155 (1929). But we have long held that this language "is not a formulation of immutable principle," and that "Congress did not intend to make events at the date of death invariably determinative in computing the federal estate tax obligation." *Naify*, 672 F.3d at 626 (quoting *Estate of Shedd v. Comm'r*, 320 F.2d 638, 639 (9th Cir. 1963)) (internal quotation marks and alteration omitted).

1999)).  Because the Stonehill Claim was asserted before Gertrude Saunders' death, it was not contingent under *Naify*.

Yet, even though the Stonehill Claim was not contingent at the date of Gertrude Saunders' death, it was disputed.  The Claim was litigated through trial, and, as reflected in the post-mortem settlement agreement, the estate of William Saunders "at all times denied and continue[d] to deny any and all liability, negligence, breach of duty, breach of any agreement, misconduct, violation of statute, and/or wrongdoing of any kind . . . ."  Because the Stonehill Claim was contested at the time of Gertrude Saunders' death, it was "disputed" under our case law.  *See Naify*, 672 F.3d at 625–26  (describing contested lawsuits pending at the time of death as "disputed"); *see also Propstra*, 680 F.2d at 1253 (describing "disputed or contested" claims).

The Estate nevertheless asserts that, at the time of Gertrude Saunders' death, the Claim was "certain and enforceable," rather than disputed.  The Estate bases this counterintuitive argument on our decision in *Estate of Shapiro v. United States*, 634 F.3d 1055 (9th Cir. 2011). According to the Estate, *Shapiro* stands for the proposition that when a lawsuit is pending at the date of the decedent's death, and states a cognizable cause of action under the applicable substantive law, the value of such a claim must be ascertainable with reasonable certainty, irrespective of post-death events.  The Estate's reliance on *Shapiro* is misplaced for several reasons.

*Shapiro* concerned "whether love, support, and homemaking services provided by a cohabitant to her partner were sufficient consideration to support a contract claim against an estate."  *Naify*, 672 F.3d at 628 (citing *Shapiro*,

634 F.3d at 1059). Concluding that such services constituted legally sufficient consideration, the *Shapiro* court remanded to the district court with instructions to assign a date-of-death value to the claim against the estate. *Shapiro*, 634 F.3d at 1059. In the portion of its decision on which the Estate relies, the court explained that "[u]nder this court's precedent, the claim [against Shapiro's estate] must be valued as of the date of Shapiro's death." *Id.* Without providing any reasoning, the *Shapiro* court implied that events after Shapiro's death were irrelevant because "[a]ll that was known at the time of Shapiro's death was that [Shapiro's former partner] had asserted a plausible claim under Nevada law." *Id.*

The Estate argues that *Shapiro* stands for the proposition that post-death events—such as the settlement of the Stonehill Claim—are always irrelevant in computing the deduction for disputed lawsuits pending against an estate at the time of death. But the portion of *Shapiro* on which the Estate relies constitutes less than a paragraph and a sentence in a footnote, and the *Shapiro* court signaled no intention to break with existing precedent. *See Shapiro*, 634 F.3d at 1059, 1060 n.1. Indeed, as we explained in *Naify*, *Shapiro* "did not address the distinction in the Ninth Circuit between certain and enforceable claims and disputed or contingent claims." *Naify*, 672 F.3d at 628. Moreover, as *Naify* further clarified, "as a three-judge panel, the court in *Shapiro* could not reconsider or overrule [our] precedent" permitting courts to consider post-death events in computing the allowable deduction for disputed or contingent claims. *Id.* (citing *United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992)).

Consistent with *Naify*, we reject the argument that *Shapiro* renders post-death events irrelevant in computing the deduction for disputed claims pending against an estate at the

time of death. Moreover, we note that "[i]n our circuit, statements made in passing, without analysis, are not binding precedent." *Thacker v. FCC* (*In re Magnacom Wireless, LLC*), 503 F.3d 984, 993–94 (9th Cir. 2007). Rather, "[w]here it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention, it may be appropriate to re-visit the issue in a later case." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 737 F.3d 1262, 1268 n.8 (9th Cir. 2013) (quoting *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring)).

To the degree the Estate asserts that the *Shapiro* panel tacitly departed from our circuit's well-settled law regarding the deductibility of disputed claims against an estate, we join *Naify* in rejecting such a construction, and we conclude that *Shapiro* lacks any precedential value to that effect.

## III.    The Claim's Estimated Date-of-Death Value was not Ascertainable with Reasonable Certainty

Because the Stonehill Claim was disputed at the time of Gertrude Saunders' death, the tax court properly considered its post-death settlement value in computing the allowable deduction. Even so, the Estate asserts that the tax court should have assigned it a date-of-death value, notwithstanding the substantial disparities in expert valuations, and the post-mortem settlement of the Claim. The Estate's arguments are unpersuasive.

As one of the Estate's experts opined, the Estate's potential liability in connection with the Stonehill Claim

"range[d] between one dollar ($1) and ninety million dollars ($90 million)." In view of this uncertainty, the Estate's expert valuations varied widely, with one expert appraising the Claim at $19.3 million, another valuing it at either $30 million or $25 million, and a third assigning it a value of $22.5 million. As the tax court correctly observed, this diversity of expert opinion is a "prima facie indication[] of the lack of reasonable certainty." *Estate of Saunders*, 136 T.C. at 422.

Under the applicable Treasury Regulations, "[a]n estate cannot deduct a claim based on a vague or uncertain estimate." *Naify*, 672 F.3d at 624 (citing Treas. Reg. § 20.2053-1(b)(3)). Thus, in *Naify*, we concluded that a claim's value was not ascertainable with reasonable certainty where the claim "had a range of possible values between $0 and $62 million." *Naify*, 672 F.3d at 625. Here, one of the Estate's experts conceded that the range of values for the Stonehill Claim (from $1 to $90 million) was even greater than that rejected in *Naify*. For these reasons, the Stonehill Claim's estimated date-of-death value was not ascertainable with reasonable certainty, and the Commissioner properly disallowed the Estate's $30 million deduction.[6]

In arguing otherwise, the Estate contends that the estimated value of the Stonehill Claim was reasonably ascertainable because courts routinely value pending claims

---

[6] The Estate contends that the tax court improperly discounted Schwab's report because, in the court's view, Schwab relied excessively on Perkin's unconvincing opinions. We need not decide whether the Estate's reports are convincing, however. Even assuming they are, the disparity in expert valuations shows that the Stonehill Claim's estimated date-of-death value was not ascertainable with reasonable certainty.

held by estates, even if their date-of-death value is uncertain. But the Estate confuses the valuation of assets held *by* an estate with the deduction allowable for claims pending *against* an estate. The tax court's decision in *Estate of Davis v. Commissioner*, T.C. Mem. 1993-155, 1993 WL 102487, at *3 (Apr. 8, 1993), on which the Estate relies, concerns the method for valuing claims held by an estate. Under 26 U.S.C. § 2031(a), the decedent's gross estate includes all of the decedent's property at the time of death, including assets of uncertain value. *See Shackleford v. United States*, 262 F.3d 1028, 1031 (9th Cir. 2001) (citing 26 U.S.C. §§ 2031, 2033). By contrast, the estimated values of claims pending against an estate are deductible only if, *inter alia*, they are ascertainable with reasonable certainty. *See* Treas. Reg. § 20.2053-1(b)(3). Thus, the tax court correctly concluded that "a value may be determined for asset inclusion purposes that does not satisfy the 'ascertainable with reasonable certainty' standard for deduction purposes." *Estate of Saunders*, 136 T.C. at 418–19.

In *Naify*, we relied on the tax court's decision in this very case for the proposition that "stating and supporting a value is not equivalent to ascertaining a value with reasonable certainty." *Naify*, 672 F.3d at 624 (quoting *Estate of Saunders*, 136 T.C. at 422). We further explained that "it cannot be that simply because one can assign a probability to any event and calculate a value accordingly, any and all claims are reasonably certain and susceptible to deduction." *Naify*, 672 F.3d at 625 (quoting *Marshall Naify Revocable Trust v. United States*, No. C 09–1604 CRB, 2010 WL 3619813, at *5 (N.D. Cal. Sept. 9, 2010)). Here, although the Estate's experts stated and supported various estimated values for the Stonehill Claim, the Estate failed to show that the Claim's estimated value was ascertainable with reasonable

certainty.  As such, the Commissioner properly disallowed the Estate's $30 million deduction.[7]

## IV.     The Tax Court Properly Allowed a Deduction Based on the Claim's Post-Mortem Settlement Value

Where "a claim's value is not ascertainable with reasonable certainty, but later becomes certain, an estate may petition the tax court or file a claim for a refund." *Naify*, 672 F.3d at 624 (citing Treas. Reg. § 20.2053-1(b)(3)). Because the Stonehill Claim was disputed at the time of Gertrude Saunders' death, "post-death events are relevant when computing the deduction to be taken" for it. *Naify*, 672 F.3d at 626 (quoting *Propstra*, 680 F.2d at 1253). Specifically, "[t]he Treasury Regulations suggest that a post-death settlement is dispositive of a claim's value." *Naify*, 672 F.3d at 628–29 (citing Treas. Reg. § 20.2053-1(b)(3)).  Here, the value of the Stonehill Claim became certain when it settled after Gertrude Saunders' death.  Thus, the tax court properly allowed a deduction in the amount of the Claim's settlement value.[8]

---

[7] The Commissioner also argues that the $30 million deduction was properly disallowed because the Estate failed to show that any amount "will be paid," as the Regulations require.  Treas. Reg. § 20.2053-1(b)(3). According to the Commissioner, the "will be paid" requirement bars the deduction of estimated amounts for claims that may never be paid.  We decline to reach this issue, because it is clear that the estimated date-of-death value of the Stonehill Claim was not ascertainable with reasonable certainty.

[8] In a footnote in its opening brief, and again on reply, the Estate contends that the tax court contravened the Tax Court Rules of Practice and Procedure.  Arguments raised only in footnotes, or only on reply, are generally deemed waived. *City of Emeryville v. Robinson*, 621 F.3d 1251,

**CONCLUSION**

The Claim at issue in this case was disputed at the date of the decedent's death, and its estimated value as of that date was not ascertainable with reasonable certainty.  Under these circumstances, the tax court properly disallowed the Estate's $30 million deduction, but correctly allowed a deduction in the amount paid to settle the Claim after the decedent's death. We therefore affirm the decision of the tax court.

**AFFIRMED.**

---

1262 n.10 (9th Cir. 2010); *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam).  We therefore decline to address this argument.